**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| MARIA CAMILA VALENCIA RIOS, *on behalf of herself and all similarly situated individuals*, <br><br> Plaintiff, <br><br> v. <br><br> BELVEDERE NRDE, LLC, and PEGASUS RESIDENTIAL, LLC, <br><br> Defendants. | Civil Action No. 3:25-cv-474 |

## COMPLAINT

Plaintiff Maria Camila Valencia Rios, on behalf of herself and all other similarly situated individuals, files this Class Action Complaint against Defendants Belvedere NRDE, LLC ("Belvedere), and Pegasus Residential, LLC ("Pegasus"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for actual, punitive, and statutory damages, costs, and attorneys' fees for Defendants' violations of the Virginia Residential Landlord Tenant Act ("VRLTA"), Va. Code § 55.1-1200, *et seq.*, and Virginia Consumer Protection Act ("VCPA"), Va. Code § 36.96.1, *et seq.*

2.      Ms. Valencia Rios's claims stem from Defendants' fraudulent and unlawful conduct in imposing and collecting a $9-per-month Pest Fee and a $34-per-month Community Fee that Defendants represent as necessary for each tenant to receive pest-control services and properly maintained common spaces in Defendants' multi-unit apartment complexes.

1

3.    Defendants were well aware at the time they implemented the Pest Fee and Community Fee in their lease agreements that they bore the sole burden of providing pest-free premises to their tenants and maintaining the building's common areas in fit condition. Indeed, both VRLTA and the Virginia Court of Appeals have explicitly held that such fees cannot be charged to tenants. *See* Va. Code § 55.1-1220(A) (requiring landlords to, in relevant part, "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition" and "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition"); *Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

4.    Notably, missing from the lease's section outlining relevant sections of the Virginia Residential Landlord Tenant Act, is a disclosure that Ms. Valencia Rios was already entitled to the rights and services that the lease agreement conditions upon payment of the Pest Fee and Community Fee and that the landlord bears the burden under Virginia Law to provide. Further adding to the deceptive nature of the lease conditions, many of the services for which tenants pay through the Community Fee are undisclosed and arbitrarily decided by Defendants.

5.    Thus, Defendants engaged in and continue to engage in and profit from a scheme that induces their tenants into a residential lease that misrepresents their rights to certain services related to the warrant of habitability—guaranteed under Virginia Law—and forces them to waive such rights.  Living with the harm of having paid, and continuing to pay, Defendant's fraudulent

monthly fees for over two years, Ms. Valencia Rios is forced to bring this lawsuit to seek relief for Defendants' ongoing violations of the VCPA and the VRLTA.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over all Counts under 28 U.S.C. § 1332(d) because Ms. Valencia Rios and putative class members (Virginia) and Defendant Belvedere NRDE, LLC, (Delaware and Utah) and Defendant Pegasus Residential, LLC (Georgia) are each citizens of different states and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Under 28 U.S.C. § 1332(d)(6), "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." The test for determining whether the amount in controversy is "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* F.2d 568, 569 (4th Cir.1964)). Statutory damages "are properly includable in the calculation of the jurisdictional amount," including increased damages for willful violations. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009). Attorney's fees may also be included in the amount in controversy when recoverable under the asserted statute. *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933) (holding that where a state statute provides for the award of attorney's fees, those fees can be considered as part of the amount in controversy).

7.      Here, Pegasus Residential, LLC has 4288 units among its 15 Virginia properties, meaning that there are at least 4288 putative class members (before counting any co-tenants in each unit) in Count One, which seeks relief for all persons who signed a lease with landlords of Virginia properties managed by Pegasus Residential, LLC. The Belvedere, a multi-unit

apartment complex owned by Defendant Belvedere NDRE, LLC, has 296 units, meaning there are at least 296 putative class members (before counting any co-tenants in each unit) in Counts Two and Three, which seek relief for all persons who signed a lease with Defendant Belvedere, NDRE, LLC.

8.      In Count One, which alleges violations of the VCPA, Ms. Valencia Rios and each class member are entitled to at least $1,000 per month for each month that Pegasus Residential, LLC willfully collected the Pest Fee and Community Fee, for at least a total of $24,000 per class member as of the date of this Complaint, or $102,912,000 for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Community Fees and Pest Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (holding future damages may be included in this calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5. 3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy). This is before considering the attorney's fees that the Court could award under the VCPA. Va. Code § 59.1-204(B).

9.      In Count Three, Ms. Valencia Rios and each class member are entitled to at least $1,000 per month for each month that Defendant Belvedere NDRE, LLC, willfully charged the Pest Fee and Community Fee, for at least a total of $24,000 per class member as of the date of this Complaint, or $7,104,000 for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Community Fees and Pest Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir.

1976) (holding future damages may be included in this calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5.3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy).  This is before considering the attorney's fees that the Court could award under the VCPA.  Va. Code § 59.1-204(B).

10.    The Court has jurisdiction over all other claims under at least 28 U.S.C. § 1367 because they each arise from the same case or controversy as Count One.

11.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Ms. Valencia Rios's claims occurred in this District and Division, where Ms. Valencia Rios resides and property owned by Defendant Belvedere NDRE, LLC, and managed by Defendant Pegasus Residential, LLC is located.

## PARTIES

12.    Plaintiff Valencia Rios is a natural person residing in this Division and District.

13.    Defendant Belvedere, NDRE, LLC, is a limited liability company incorporated in Delaware with its principal place of business in Utah.

14.    Defendant Belvedere is a "supplier" under the VCPA because it is a "lessor . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes.  Va. Code § 59.1-198.  Defendant Belvedere is also a "landlord" as defined by the VRLTA, as they are the owner and lessor of the dwelling units in The Belvedere, of which Ms. Valencia Rios is a tenant.

15.     Defendant Pegasus Residential, LLC, is a limited liability company incorporated in Georgia with its principal place of business in Georgia.  The Belvedere is advertised, operated, managed, and leased by Pegasus on behalf of Defendant Belvedere.

16.     Defendant Pegasus is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes.  Va. Code § 59.1-198. Pegasus is the entity that collects the Community Fee and Pest Fee on behalf of Belvedere, and it is liable for its misrepresentations to Ms. Valencia Rios and the putative class members that they owe, and that it can collect, such fees.

## FACTS

### *Plaintiff Valencia Rios's Lease Agreement*

17.     Plaintiff Valencia Rios is a resident of North Chesterfield, Virginia.

18.     She resides at The Belvedere, a multi-unit apartment complex owned by Defendant Belvedere and managed by Pegasus.

19.     Ms. Valencia Rios first signed the Lease with Belvedere on March 9, 2024, for an initial term set to expire on June 18, 2025.

20.     Among the many provisions in the Lease are a Pest Fee and a Community Fee.

21.      The Pest Fee is included in a "Utility Addendum" attached to the Lease.  The Pest Fee obligates Belvedere's tenants to pay a $9 monthly flat rate to cover any pest control bills sent to Belvedere by service providers.

22.     The last page of the Lease includes a "special provision" that requires Belvedere's tenants to assume responsibility for and pay $23-per-month Community Fee.  The "special provision" provides:

> For Leases after April 4, 2022, in addition to Rent set forth in Section 6, you are responsible for and required to pay a Community Fee in the Rent, which Community Fee is charged to you for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you, regardless of the state of operation of such amenities or program.  This Community Fee will not increase for the initial term of the Lease Contract, but may increase at lease renewal by written notice.

23.     Ms. Valencia Rios renewed her Lease at the expiration of the lease term, and entered into a new agreement effective June 19, 2025. All terms appear the same except the Community Fee increased to $34.00 each month.

24.     Pegasus, through its employees, was responsible for providing the Leases to Ms. Valencia Rios and the putative class members in Count One, and for collecting all amounts allegedly owed under their leases.  Upon information and belief, although the lease agreements in Count One are signed by Belvedere and the other respective landlords at Pegasus's Virginia properties, Pegasus is responsible for drafting the terms of the form lease agreements used at all of its properties, including Ms. Valencia Rios's Lease, which misrepresent to tenants like Ms. Valencia Rios that it can collect the Pest Fee and Community Fee at issue in this lawsuit. Pegasus is also directly responsible for publishing to tenants monthly invoices and other correspondence claiming that such fees are duly owed under the terms of their lease agreements.

25.     Although Defendants claimed that Ms. Valencia Rios and others lawfully owed these amounts, however, Virginia law prohibits Belvedere and Pegasus from collecting either the Pest Fee or the Community Fee.

7

26.     Indeed, through the Pest Fee, Belvedere unlawfully shifts the burden to maintain a pest-free premises onto Ms. Valencia Rojos and its other tenants.

27.     This conduct directly violates Virginia Law, which prohibits landlords from creating lease provisions that waive the warranty of habitability established by Va. Code § 55.1-220(A). *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

28.     Here, Defendants require their tenants to pay a monthly fee to cover pest-control costs. The imposition of this fee not only violates the Virginia Residential Landlord Tenant Act but also misrepresents the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to a pest-free premises. This conduct is in direct violation of the Virginia Consumer Protection Act. Va. Code § 59.1-200(14).

29.     Defendants knowingly forced Ms. Valencia Rios and all other tenants to waive their right to the warranty of habitability guaranteed by Virginia Law. Defendants shifted the obligation to maintain a pest-free premises onto its tenants and profited from the imposition of "pest fees" that they had no right to charge.

30.     Similarly, Defendants also charged to Ms. Valencia Rios and her co-tenants, as well as, upon information and belief, tenants at Pegasus's other Virginia properties, a Community Fee that they knew they could not lawfully charge to tenants.

31.    For years, Defendants never imposed or required the payment of community upkeep fees.

32.    Then, for all leases beginning on April 4, 2022, Defendants implemented a $23-per-month Community Fee that they had never previously collected or charged for the maintenance of the building's common areas.  Ms. Valencia Rios, and all other tenants living at complexes managed by Defendant Pegasus, were suddenly required to bear the burden of common space maintenance to secure residence at the property.

33.    Through the required Community Fee, Defendant obligated Ms. Valencia Rios and all other tenants to pay for the right to well-maintained common spaces—a right to which they are already entitled under Virginia law.  Thus, Belvedere's mandatory Community Fee, from which Defendant Pegasus profits, directly violates the Virginia Residential Landlord Tenant Act which imposes an obligation on the landlord to maintain a multi-unit complex's common areas.  Va. Code § 55.1-1220.   Specifically the Act requires the landlord to "keep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition."  *Id.* §  55.1-1220(A)(3).  A landlord and tenant may agree in writing that *the tenant* perform the landlord's duties but only if "the transaction is entered into in good faith and not for the purpose of evading the obligations of the landlord," and even then, the VRLTA does not permit the landlord in any circumstance to shift the costs of its own obligation to maintain common areas to the tenant.  *Id.* § 55.1-1220(D).

34.    Here, Belvedere's Community Fee is a blatant attempt to evade the landlord's obligation to maintain its property's common spaces.   The required Community Fee is unilaterally imposed through the Lease's pre-written "special provision," on tenants, including

9

Ms. Valencia Rios, who are uninformed of their rights and unaware that the landlord is obligated to maintain the building's common spaces.

35.    The "special provision" also fails to adequately disclose the services for which tenants will be paying through the "community fee."  The "special provision" states that the community fee is charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  Therefore, many of the services that for which tenants pay through the community fee are undisclosed and arbitrarily decided by Defendants.  Due to the fraudulent and deceptive character of the Community Fee, Ms. Valencia Rios and similarly situated tenants did not enter into the agreement knowingly and voluntarily.

36.    The Defendants' imposition of the Community Fee misrepresents the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to properly maintained common spaces when, under Virginia Law, Ms. Valencia Rios and similarly situated tenants are already entitled to these amenities through their payment of monthly rent.  These misrepresentations, made by both Defendants through the Lease Agreements drafted and executed by them and in Pegasus's monthly invoices to tenants claiming that such amounts are owed, directly violates the Virginia Consumer Protection Act.  Va. Code § 59.1-200(14).

37.    Defendants' misrepresentations of the Pest Fee and Community Fee were willful. Defendants stood to rake in thousands in additional revenue from tenants to cover costs that should have been covered by their rent and which were the landlords' sole burden to bear under Virginia law.  Upon information and belief, Defendants also profited from the imposition of

both fees, as the revenues generated by such fees exceeded the actual costs of providing the alleged services that they covered.  Defendants thus had a pecuniary incentive to represent to Ms. Valencia Rios and the putative class members that such fees were collectible, when they explicitly were not under Virginia law.

38.     Defendants knowingly forced Ms. Valencia Rios and their other tenants to assume Belvedere's and other Pegasus landlords' obligations to maintain the building's common spaces and pest-free premises and profited from the imposition a Pest Fee and Community Fee that they had no right to charge. They did so solely for their pecuniary gain and without regard to this known harm to their tenants.

### COUNT ONE
### VIOLATION OF VCPA, Va. Code § 59.1-200
### (Class and Individual Claim by Plaintiff against Defendant Pegasus)

39.     Plaintiff incorporates each of the preceding allegations.

40.     Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class of which she is a putative class member:

> All persons who: (1) executed a lease within the past two years at a property managed by Defendant Pegasus and located in Virginia under which they (2) paid a Pest Fee and/or Community Fee.

41.     **Numerosity. Fed R. Civ. P. 23(a)(1)**.  Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical.  The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

42.     **Predominance of Common Questions of Law and Fact. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).**  Common questions of law and fact exist as to all

putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendant Pegasus misrepresented to Plaintiff and the putative class members in their lease agreements that payment of a Pest Fee and/or a Community Fee was necessary to secure their right to properly maintained common spaces and pest-free premises; (2) whether Defendant Pegasus' violations were willful; and (3) the appropriate amount of damages for Defendant Pegasus' violations.

43.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

44.    **Adequacy of Representation.  Fed R. Civ. P. 23(a)(4).**  Plaintiff Valencia Rios is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests. She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

45.    **Superiority.  Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to

effectively redress the wrongs done to them in individual litigation.  Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant Pegasus's conduct.  By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

46.    Defendant Pegasus represented in lease agreements drafted and published by it to Plaintiff and the putative class members that they were required to pay a Pest Fee and/or a Community Fee as a condition of securing residence at the respective properties and receiving the right to properly maintained common spaces and pest-free premises. The services conditioned upon these fees are basic aspects of suitable living conditions under the warranty of habitability which Plaintiffs and the putative class members are guaranteed when entering into a residential lease agreement. Va. Code § 55.1-1200.

47.    Although Defendant Pegasus's lease agreements include a section outlining relevant sections of the Virginia Residential Landlord Tenant Act, they failed to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Pest Fee and Community Fee.  Defendant Pegasus also failed to disclose that Virginia Law obligates the landlord—not the tenant—to provide properly maintained common spaces and pest-free premises.

48.    Further, the "special provision" in the lease agreement fails to adequately disclose the services for which tenants will be paying through the Community Fee.  The "special

provision" states that the Community Fee will be charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  Consequently, many of the services for which tenants pay through the Community Fee are undisclosed and arbitrarily decided by Belvedere and Defendant Pegasus, compounding the fraudulent and deceptive nature of the fee provision.

49.    Defendant Pegasus thus affirmatively misrepresented in the lease agreements executed between the landlords of its Virginia properties and Plaintiff and the putative class members that the payment of a Community Fee and/or Pest Fee was required to receive the benefit of pest control services and properly maintained community spaces.  Instead, these fees were unlawfully charged by the landlords of Defendant Pegasus' properties and collected by Pegasus. Pegasus intentionally misrepresented the fact that the payment of additional fees were necessary to obtain such services because they knew that such a practice is unlawful, and they wanted to conceal their customers' (i.e., landlords) violations of the VRLTA and to generate additional revenues at their properties.

50.    "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")).  The elements "of the two claims are [therefore] different."  *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a

lease agreement, as outlined in § 59.1-200. Va. Code § 59.1-199(5). With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at \*12-13 (E.D. Va. July 7, 2017) (Trenga, J.). There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

51.    Here, Plaintiff and the putative class members relied on the representation that they were required to pay the Pest Fee and Community Fee to their landlord in order to obtain pest control services and enjoy properly maintained common spaces when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements. Had Pegasus disclosed that the landlords at its properties could not collect such fees and were already obligated to provide pest-free and clean common areas, Plaintiff and the putative class members would not have agreed to pay the Pest Fee and Community Fee, which they believed at were necessary to access pest control services and enjoy properly maintained common spaces. Plaintiff relied on the representation that the payment of additional costs outlined in the lease agreement and "Utility Addendum" were necessary conditions to secure such suitable living conditions. Had she known the fees were unlawful, she would either have contested the fees or refused to sign the lease agreement.

52.    Plaintiff and the putative class members have been damaged by Defendant Pegasus's misrepresentations, including through payment of amounts that they believed were necessary to secure their right to pest-free premises and properly maintained common spaces

that they were already entitled to under Virginia Law and that were instead retained by Defendant Pegasus as profit.

53.    Defendant Pegasus has thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(14).

54.    Defendant Pegasus's violations were willful.  Defendant Pegasus knew at the time they imposed the Pest Fee and Community Fee that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing pest control services and maintaining common spaces in good condition.  Pegasus also wanted to deliberately conceal the scheme, as they knew it violated the VRLTA.  It did so for its pecuniary gain, as the fees would help its bottom line and the bottom line of its customers (i.e., the landlords).

55.    Plaintiff and the putative class members are thus entitled to damages for each month in which Pegasus collected, or will collect, the Pest Fee and Community Fee, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if Defendant Pegasus' conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if Defendant Pegasus' conduct was willful.  Va. Code § 59.1-204.

56.    Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

**COUNT TWO**
**VIOLATION OF VRTLA, Va. Code § 55.1-1220**
**(Class and Individual Claim by Plaintiff against Belvedere)**

57.    Plaintiff incorporates each of the preceding allegations.

58.    Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of

the following class of which she is a putative class member:

> All persons who: (1) executed a lease with Defendant Belvedere under which
> they (2) paid a Pest Fee and Community Fee.

59.    **Numerosity. Fed R. Civ. P. 23(a)(1)**.  Upon information and belief, Plaintiff

alleges that the class members are so numerous that joinder of all is impractical.  The class

members' names and addresses can be identified through Defendant's and third-parties' internal

business records, and the class members may be notified of the pendency of this action by

published or mailed notice.

60.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P.**
**23(a)(2) and Fed. R. Civ. P. 23(b)(3).**  Common questions of law and fact exist as to all

putative class members, and there are no factual or legal issues that differ between them.  These

questions predominate over the questions affecting only individual class members.  The

principal issues include: (1) whether Belvedere is subject to the VRLTA; (2) whether Belvedere

violated Va. Code § 55.1-1220 by evading its obligation to maintain the building's common

spaces and forcing tenants to waive the warrant of habitability through the lease agreement; and

(3) the appropriate amount of damages for Belvedere's conduct.

61.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims

of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes

of action as the other putative class members.  All claims are based on the same facts and legal theories.

62.     **Adequacy of Representation.**  **Fed R. Civ. P. 23(a)(4).**  Plaintiff Valencia Rios is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests.  She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

63.     **Superiority.**  **Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would prove burdensome and expensive.  It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation.  Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant Pegasus' conduct.  By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

64.     Belvedere violated Va. Code § 55.1-1220 by (1) forcing tenants to waive the warranty of habitability through a Pest Fee included in the lease agreement (2) and shifting the

18

burden to maintain common spaces onto its tenants through a mandatory Community Fee in the lease agreement.

65.    Virginia law prohibits landlords from shifting the burden to address pest infestations to the tenant, because the warranty of habitability is an unwaivable guarantee under Va. Code § 55.1-220(A).  *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024).

66.    Belvedere's demand in the Utility Addendum that tenants pay a Pest Fee is therefore a violation of the VRLTA.

67.    Belvedere further violated Va. Code § 55.1-1220 by evading its obligation to maintain the building's common areas by requiring Plaintiff and the putative class members to pay a Community Fee in the "special provision" section of their lease agreement.  Under Va. Code. § 55.1-1220(A)(3), landlords have an obligation to "keep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition."  Under the same reasoning in *Parrish*, landlords may not shift this burden to tenants except to the extent they shift the entire burden of actually performing such duties—not simply paying for them—to the tenant through a good faith transaction not intended to evade the landlord's burden.  *See* Va. Code § 55.1-1220(D).

68.    Here, the exception under § 55.1-1220(D) does not apply to the Community Fee, which seeks to shift only the cost of Belvedere's obligation to maintain clean common areas to its tenants, as opposed to the actual duties themselves.  Moreover, Belvedere's Community Fee is in bad faith and constitutes a blatant attempt to evade the landlord's obligation to maintain its properties' common spaces.  The required community fee is unilaterally imposed through the lease's pre-written "special provision."  The lease agreement fails to disclose that Plaintiff and

the putative class members do not bear the burden of maintaining common spaces and are already entitled to the right to enjoy properly maintained common spaces conditioned upon payment of the Community Fee.

69.    Further, the "special provision" in the lease agreement fails to adequately disclose the services for which tenants will be paying through the Community Fee.  The "special provision" states that the Community Fee will be charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  Consequently, many of the services for which tenants pay through the Community Fee are undisclosed and arbitrarily decided by Belvedere and Defendant Pegasus.

70.    For these reasons, Plaintiff and the putative class members did not enter into the agreement knowingly and voluntarily, and Belvedere's unilateral imposition of the Community Fee onto Plaintiff and the putative class members, who were not adequately informed of their rights and of the landlord's obligation to maintain the building's common areas, was an agreement made in bad faith and constitutes a blatant attempt by Belvedere to evade its obligation under the VRLTA.  Belvedere's demand for and collection of a Community Fee through its lease agreement is therefore in violation of the VRLTA.

71.    Due to Belvedere's violations of the VRLTA, Plaintiff is entitled, individually and on behalf of the class, to her damages under Va. Code. § 55.1-1259, including, at minimum, the Pest Fee and Community Fee payments she and the putative class members have made thus far and will make during the pendency of the lawsuit.  She and the putative class are also entitled to an injunction enjoining the Pest Fee and the Community Fee into the future.

## COUNT THREE
### VIOLATION OF VCPA, Va. Code § 59.1-200
### (Class and Individual Claim by Plaintiff against Belvedere)

72.    Plaintiff incorporates the preceding allegations.

73.    Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the same putative class as Count Two, of which she is a member.

74.    **Numerosity. Fed R. Civ. P. 23(a)(1)**.  The class members are so numerous that joinder of all is impractical.  The class members' names and addresses can be identified through Defendant's and third-parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

75.    **Predominance of Common Questions of Law and Fact. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).**  Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them.  These questions predominate over the questions affecting only individual class members.  The principal issues include: (1) whether Belvedere misrepresented to Plaintiff and the putative class members in their lease agreements that payment of a Pest Fee and/or Community Fee was necessary to secure their right to pest-free premises and properly maintained common spaces; (2) whether Belvedere's violations were willful; and (3) the appropriate amount of damages for Belvedere's violations.

76.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

77.     **Adequacy of Representation.  Fed R. Civ. P. 23(a)(4).**  Plaintiff is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests.  She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

78.     **Superiority.  Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive.  It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation.  Even if class members could afford it, individual litigation would be an unnecessary burden on the Court.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant Pegasus' conduct.  By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

79.     Belvedere represented in its lease agreements with Plaintiff Valencia Rios and the putative class members that they were required to pay a Pest Fee and a Community Fee as a condition of securing residence at the respective properties and receiving the right to pest-free premises and properly maintained common spaces. The services conditioned upon these fees are

basic aspects of suitable living conditions under the warranty of habitability which Plaintiffs and the putative class members are guaranteed when entering into a residential lease agreement. Va. Code § 55.1-1200.

80.     Although the lease agreement includes a section outlining relevant sections of the Virginia Residential Landlord Tenant Act, it fails to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Pest Fee and Community Fee.  Belvedere also failed to disclose that Virginia law obligates the landlord—not the tenant—to provide pest-free premises and properly maintained common spaces. The Defendants' imposition of the Community Fee misrepresents the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to properly maintained common spaces when, under Virginia Law, Ms. Valencia Rios and similarly situated tenants are already entitled to these amenities through their payment of monthly rent.  The fraudulent conduct in which Belvedere is engaging directly violates the Virginia Consumer Protection Act.  Va. Code § 59.1-200(14).

81.     Further, the "special provision" in the lease agreement fails to adequately disclose the services for which tenants will be paying through the "community fee."  The "special provision" states that the community fee is charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  Therefore, many of the services for which tenants pay through the Community Fee are undisclosed and arbitrarily decided by Belvedere and Defendant Pegasus, compounding the fraudulent and deceptive nature of the fee provision.

82.    Belvedere thus affirmatively misrepresented in the lease agreements executed between the landlords of their Virginia properties and Plaintiff and the putative class members that the payment of a Community Fee and Pest Fee was required to access pest control services and to receive the benefit of properly maintained community spaces.  Instead, these fees were unlawfully charged by Belvedere.  Belvedere intentionally misrepresented the fact that the payment of additional fees was necessary to obtain such services because they knew that such a practice is unlawful, and they wanted to conceal their violations of the VRLTA and to generate additional revenue for their and Pegasus's pecuniary gain.

83.    Here, Plaintiff and the putative class members relied on the representation that they were required to pay the Pest Fee and Community Fee to Belvedere in order to obtain pest control services and enjoy properly maintained common spaces when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements. Had they known that such fees were unlawful, Plaintiff and the putative class members would not have agreed to pay the Pest Fee and Community Fees, which they believed were necessary to access pest control services and enjoy properly maintained common spaces. Plaintiff and the putative class members reasonably relied on the representation that the payment of additional costs outlined in the lease agreement and "Utility Addendum" were necessary conditions to secure such suitable living conditions.  Had Plaintiff and the other tenants known the fee was unlawful, she and the putative class members would either have contested the fee or refused to sign the lease agreement.

84.    Plaintiff and the putative class members have been damaged by Defendant Pegasus's misrepresentations, including through payment of amounts that they believed were

necessary to secure their right to pest-free premises and properly maintained common areas to which they were already entitled under Virginia Law and that were instead prohibited by Virginia law.

85.    Belvedere has thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction, § 59.1-200(14).

86.    Belvedere's violations were willful.  Belvedere knew at the time it imposed the Pest Fee and Community Fee that Virginia law prohibited it from shifting the burden to maintain pest-free and clean common areas to its tenants.  Yet, Belvedere knowingly chose to ignore its explicit obligations under Virginia law and to charge its tenants for a burden that was its, alone, to bear.  It did so for its own pecuniary gain, as it stood to reap significant cost savings from the additional fees as well as, upon information and belief, additional profits.

87.    Plaintiff and the putative class members are thus entitled to damages for each month in which Belvedere charged and collected, or will charge and collect, the Community Fee and Pest Fee, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if Belvedere's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if Belvedere's conduct was willful.  Va. Code § 59.1-204.

88.    Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; injunctive relief; her attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFF**

By:    */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*