IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARIA CAMILLA VALENCIA RIOS, *on behalf of herself and all similarly situated individuals*    ) ) ) ) Plaintiff,    ) ) v.    ) ) BELVEDERE NRDE, LLC, and PEGASUS RESIDENTIAL, LLC,    ) ) ) ) Defendants.    ) ) ) | Civil Action No. 3:25-cv-474 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BELVEDERE NRDE, LLC'S MOTION TO DISMISS COUNTS II AND III OF PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant, Belvedere NRDE, LLC ("Belvedere"), by counsel, and in support of its Motion to Dismiss the Complaint against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7, states as follows:

### INTRODUCTION

In *Parrish v. Vance*, 898 S.E.2d 407 (Va. Ct. App. 2024), the Virginia Court of Appeals held that a landlord could not use a lease provision requiring his tenant to eliminate all pests and vermin in the property as a defense to a "tenant's assertion" claim pursuant to Code § 55.1-1244 that the landlord breached the warranty of habitability by ignoring his tenants pleas to deal with a flea infestation. Plaintiff has been a tenant in The Belvedere—an apartment complex owned by Belvedere—since March 2024, and recently renewed her lease for 2025. A copy of Plaintiff's lease

and related materials is attached to this Memorandum as Exhibit A.[1] Plaintiff has attempted to stretch this narrow holding to justify a wide-ranging claim that Virginia law prohibits landlords from charging any routine pest or community fees in residential leases. Virginia law does not go so far and Plaintiff has failed to state a claim for which relief can be granted.

## LEGAL STANDARD

A motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a 'complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.'") (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis omitted)). In evaluating a motion to dismiss under Rule 12(b)(6), a court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208

---

[1] A District Court can consider matters from outside the four corners of the Complaint if they are "integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016).

(4th Cir. 2017). That said, under Federal Rule of Civil Procedure 9(b), allegations of fraud must "state with particularity the circumstances constituting fraud."

## ARGUMENT

### I. Plaintiff Fails to State a Claim for a Violation of the VRLTA Because the Lease Preserves the Warranty of Habitability.

Plaintiff's claims against Belvedere stretch Virginia landlord-tenant law well past its breaking point. The Virginia Residential Landlord Tenant Act (the "VRLTA"), Va. Code §§ 55.1-1200, *et seq.*, provides a limited and narrow restriction on what language may be included in a lease. Relevant here, a residential lease may not "waive or forego" any remedies provided by law. Plaintiff contends that Belvedere has violated the VRLTA by charging her certain fees for routine pest services and a community fee on the theory that a landlord is not permitted to charge a separate fee for services that are related to the quality of an apartment complex. Plaintiff takes the novel position that these fees amount to a waiver of the warranty of habitability. Plaintiff is wrong. Plaintiff fails to allege in her Complaint sufficient facts to show that any terms in her lease waive the warranty of habitability and the Court should dismiss Count II of the Complaint.

#### A. Overview of the VRLTA.

Virginia residential landlord-tenant law is governed by the VRLTA. A fundamental aspect of the VRLTA is its preservation of landlord and tenants' rights to freedom of contract. Code § 55.1-1204 expressly provides that a "landlord and tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law, including rent . . . and other provisions governing the rights and obligations of the parties." Notably, the word "rent" is a defined term under the VRLTA: "'Rent' means all money, other than a security deposit, owed or paid to the landlord under the rental agreement . . . ." Va. Code § 55.1-1200. Additionally, at the time of Plaintiff's lease, the VRLTA provided that "in addition to the periodic rent," landlords

3

should provide to tenants a description of "any rent and fees to be charged to the tenant." Code § 55.1-1204.1 (2024).[2] Among the specifically enumerated terms and conditions prohibited by the VRLTA are terms requiring the tenant to "waive or forgo rights or remedies under this chapter." Va. Code § 55.1-1208(A)(1). Nothing in the VRLTA expressly prohibits fees for preventative pest services or community fees.

Additionally, the VRLTA provides specific obligations of both landlords and tenants. As relevant here, a landlord must make "all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Va. Code § 55.1-1220(A)(2). The VRLTA also imposes a statutory obligation on *tenants* to keep "that part of the dwelling unit and the part of the premises that he occupies free from insects and pests . . . and promptly notify the landlord of the existence of any insects or pests." Va. Code § 55.1-1227(A)(3). Furthermore, a tenant is statutorily liable for "the cost of treatment or extermination due to the tenant's fault in failing to prevent infestation of any insects or pests in the area occupied." Va. Code § 55.1-1227(A)(14).

### B. The Lease Does not Waive or Forego the Warranty of Habitability.

Plaintiff alleges in her Complaint that merely charging a $9.00 pest fee and $23.00 community fee ($34.00 the following year) constitutes an attempt by the landlord to evade its obligation to provide fit and habitable premises by shifting that obligation to tenants. Plaintiff is

---

[2] The 2025 amendments to Code § 55.1-1204.1 provide that:

> A landlord shall provide, beginning on the first page of the written rental agreement, an itemization of all charges to the tenant that comprise (i) the security deposit, (ii) the amount of rent due per payment period pursuant to the lease period, and (iii) any additional one-time charges due prior to the commencement date of the rental agreement or that will be included in the first rental payment. Immediately above the itemized list of charges, the written rental agreement shall state: No additional security deposits or rent shall be charged unless they are listed below or incorporated into this agreement by way of a separate addendum after execution of this rental agreement.

4

wrong because Virginia law, while requiring landlords to maintain fit premises, does not prohibit landlords from collecting fees that are in any way connected with a condition that *could* implicate the warranty of habitability. Put differently, Plaintiff has not sufficiently alleged that Belvedere has violated the warranty of habitability or that the fees charged are an impermissible attempt to bypass or shift the landlords obligations.

Plaintiff relies heavily on the *Parrish v. Vance* decision in support of her claims. 898 S.E.2d 407 (Va. Ct. App. 2024). There, the Virginia Court of Appeals held that a landlord breached the VRLTA when he failed to remediate a flea infestation in his tenant's single-family home. *Parrish*, 898 S.E.2d at 409. The infestation in *Parrish* was so dire that the fleas were too numerous to count, were visible to the tenant and her visitors, and "ate [the tenant's] body pretty bad." *Id.* at 409 n.2, 410. Despite the clear and present threat to his tenant's health and safety, and the requirement that a landlord provide a habitable residence, the landlord sought to escape his obligations to his tenant by pointing to a lease provision that provided that the tenant was "responsible for the costs of the elimination of all such pests and vermin during occupancy." *Id.* at 411. The Court held that this clause could not be used as a shield by the landlord to justify a refusal to maintain a habitable premise, because that protection is unwaivable under Virginia law. *Id.* at 413.

The holding of *Parrish* is necessarily narrow, and Plaintiff's assertion in her Complaint that "both the VRLTA and the Virginia Court of Appeals have explicitly held that [pest and community] fees cannot be charged to tenants" is a misstatement of the law. (Compl. ¶ 3, ECF No. 1.) *Parrish* is entirely silent on the matter of whether a pest fee can be charged to a tenant, separate and apart from any assertion that the premises are unfit for habitation and *Parrish* did not make any holdings at all relevant to community fees. The VRLTA, on the other hand, *does* explicitly provide that the parties to a residential lease may agree to terms regarding "rent," of which—as

defined by the VRLTA—the pest fee and the community fee are part. *See* Va. Code § 55.1-1200 (defining "rent" as all payments to the landlord other than security deposits).[3]

There is simply an unbridgeable gap between the facts and holding of *Parrish* and the facts and conclusions Plaintiff alleges in her Complaint. The pest fee and the community fee are nothing more than separately delineated rent charges for services provided to tenants. They are not attempts by Belvedere to shift its ultimate responsibility to provide habitable premises to its tenants.[4] Indeed, Belvedere repeatedly reaffirmed its commitment to maintaining fit and habitable premises throughout the lease. *See* Ex. A ¶ 26 (Pegasus_000004) (Plaintiff accepts the apartment as is "except for [landlord's] duty to maintain in good and safe condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities, and, except for conditions materially affecting the health or safety of ordinary persons"); and Ex. A ¶ 32 (Pegasus_000005) (covenanting to act with "customary diligence" to "keep common areas reasonably clean and in a structurally safe condition" and to "maintain fixtures, furniture, hot water, heating and A/C equipment"); *see also* Ex. A at Pegasus_000071-000075 (containing Virginia Statement of Tenant Rights and Responsibilities, signed and acknowledged by Plaintiff).

Notably, Plaintiff has not alleged that her dwelling was anything other than exemplary. Of course, if Plaintiff alleged that her unit was infested with vermin or that the common areas of her

---

[3] The fact that these charges are nothing more than a breakdown of the rent for the dwelling is supported by Code § 55.1-1212. Under that section, a landlord may utilize specific submetering equipment or ratio billing systems for multi-unit dwellings. *Id.* More to the point, however, is that Code § 55.1-1212(I) provides that "Nothing in this section shall be construed to prohibit an owner, manager, or operator of a residential building from including water, sewer, electrical, natural gas, oil, or other utilities in the amount of rent as specified in the rental agreement or lease." Plainly, the VRLTA treats charges for ancillary services as part of rent when included in the lease.

[4] As a matter of practice, a holding that landlords cannot separately charge fees for pest services and community area upkeep would have *zero* practical effect on tenants other than serving to obfuscate the calculation of rent. A holding that these fees are illegal under Virginia law would simply lead to landlords increasing the amount of periodic rent to cover these services.

multi-unit building were unclean or unsafe, Belvedere would bear the ultimate responsibility to remediate those conditions upon proper notice by Plaintiff. But Plaintiff has not, and cannot, allege that those conditions exist or that Belvedere has ignored its ultimate responsibility to provide a fit and habitable dwelling space in the same manner as the *Parrish* landlord. It is this ultimate responsibility that is implicated by the warranty of habitability, and charging a fee for a service that assists the tenant in fulfilling *her* obligation to maintain a pest free dwelling unit does not violate the warranty of habitability. *See* Code § 55.1-1227(A)(3) (noting that it is the *tenant's* responsibility to keep the dwelling unit free from insects and pests); *Parrish*, 898 S.E.2d at 412 (same).

Put simply, charging a pest fee and a community fee does not constitute waiver of the tenant's right to the warranty of habitability and by agreeing to pay such fees, Plaintiff has not waived or foregone any right secured by the VRLTA. Just as a landlord is permitted to charge administrative fees for water, sewer, HVAC, and other utilities that relate to the warranty of habitability, a landlord may charge a similar fee for the provision of pest control services and general maintenance of community resources. Accordingly, the Court should dismiss Count II.

II. **Plaintiff Fails to State a Claim for a Violation of the VCPA Because Plaintiff has Failed to Allege that Belvedere has Engaged in any Fraudulent Practice.**

Plaintiff alleges that the pest fee and community fee violate the Virginia Consumer Protection Act "VCPA" because the fees "misrepresent[] the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to properly maintained common spaces when, under Virginia Law [sic], [Plaintiff] . . . [was] already entitled to these amenities through [her] payment of monthly rent." (Compl. ¶ 80, ECF No. 1.) Plaintiff's VCPA claim flows through the same erroneous legal logic as her VRLTA claim. Put

7

simply, the lease agreement contains no misrepresentations of fact and the Court should dismiss Count III of the Complaint.

### A. Plaintiff Fails to Allege that Belvedere Has Made a Misrepresentation of Fact.

First and foremost, to state a claim under the VCPA, the plaintiff must allege (1) a fraudulent act (2) by a supplier (3) in a consumer transaction. *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010). Significantly, a VCPA claim may not be premised on a consumer transaction that is subject to the VRLTA "unless the act or practice of a landlord constitutes a misrepresentation or fraudulent act or practice under § 59.1-200." Va. Code § 59.1-199.[5] Plaintiff rests her claim on the generic catch-all provision of Code § 59.1-200(14) which prohibits "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

Unlike allegations of common law fraud, an allegation of fraud in a consumer transaction constituting a violation of the VCPA does not have to show that alleged misrepresentations were made knowingly or with the intent to deceive. *Owens v. DRS Automotive Fantomworks, Inc.,* 764 S.E.2d 256, 260 (Va. 2014).[6] The "VCPA, however, still requires proof, in misrepresentation cases, of the elements of reliance and damages." *Id.* at 261. Thus, to plausibly state a claim for relief under the VCPA premised on a consumer transaction subject to the VRLTA, a plaintiff must show that the landlord made a false statement of material fact upon which plaintiff relied, and that the plaintiff suffered loss in so relying. *Id.* Under these circumstances, "a misrepresentation of fact is

---

[5] Plaintiff's VCPA claim is plainly based on an "aspect of a consumer transaction that is subject to the [VRLTA]." *Id.*

[6] However, Plaintiff may not recover treble damages unless she can prove that the violations were willful, which she cannot.

a necessary element of proof" in Plaintiff's VCPA claim. *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 716 (Va. 2001).

Plaintiff's VCPA claim fails for a simple reason: the lease does not misrepresent anything. Plaintiff contends that the lease agreements represent that "the payment of a Community Fee and/or Pest Fee was required to receive the benefit of pest control services and properly maintained community spaces." (Compl. ¶ 49, ECF No. 1.) Plaintiff characterizes this representation as a failure to "disclose[] that the landlords…could not collect such fees and were already obligated to provide pest-free and clean common areas." (*Id.* at ¶ 51.) Notwithstanding Plaintiff's errant construction of a landlord's obligations under Virginia law, the fee-related representations in the lease are not false statements of fact, nor do they represent that such fees are requisite to securing any tenant's statutorily created rights. The Community Fee is charged for amenity oversight and building maintenance. Plaintiff does not allege that this statement is false, only that it confers an obligation onto the tenant that is contrary to law. Even if a statement conferring an obligation that is contrary to law could constitute its falsity, this statement does no such thing. The VRLTA permits a landlord and tenant to agree in writing that the tenant perform the landlord's duties specified in subdivisions (A)(3), (6), and (7) of § 55.1-1220, "and also specified repairs, maintenance tasks, alterations, and remodeling." Code § 55.1-1220(D). Notably, § 55.1-1220(A)(3) obligates the landlord to "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition." The Community Fee falls squarely within the freedom of contractual delegation permitted in Code § 55.1-1220(D).

In fact, the lease *furthers* transparency by explaining the specific charges that constitute the tenant's rent under the law and the agreement. *See supra* nn. 2, 3. As defined by the VRLTA, the pest fee and community fee *are* rent (per Code § 55.1-1200) and Plaintiff's payment of her rent

9

guarantees those services to her.[7] These fees were disclosed in the written lease agreement which Plaintiff had the opportunity to review. Nothing in the lease affirmatively states or even hints that payment of these fees would constitute the waiver of the warranty of habitability or that Plaintiff would not be entitled to live in a habitable dwelling unit regardless of these fees.[8] The lease repeatedly assures Plaintiff that she is entitled to a safe, clean, and habitable apartment. *See* Part I. B *infra* (collecting lease provisions). The lease contains no misrepresentations of fact. Accordingly, Plaintiff has failed to state a claim for relief for a violation of the VCPA.

## CONCLUSION

For the aforementioned reasons, Belvedere respectfully requests that this Court dismiss Counts II and III of Plaintiff's Complaint for failure to state a claim for which relief can be granted.

Dated: August 6, 2025                                                       Respectfully Submitted,

By     */s/ Jeffrey P. Miller*

Jeffrey P. Miller (VSB No. 89410)
Jon R.L. Roellke (VSB No. 98039)
GENTRY LOCKE
P. O. Box 780
Richmond, Virginia  23218
Telephone:  (804) 956-2060
Facsimile: (540) 983-9400
miller@gentrylocke.com
jroellke@gentrylocke.com

*Counsel for Belvedere NRDE, LLC*

---

[7] Plaintiff has not alleged that she did not receive the benefit of pest services or that the common areas of her multi-unit dwelling were unclean or unsafe, or that either her unit or the common areas were in any way uninhabitable.

[8] Belvedere further incorporates its argument on Plaintiff's VRLTA claim to the extent it is applicable to its argument on Plaintiff's VCPA claim. As noted therein, Plaintiff fundamentally misunderstands the nature of the warranty of habitability and its relationship to fees contained in lease agreements.

## **CERTIFICATE**

I hereby certify that on August 6, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to all authorized users. I further certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Jeffrey P. Miller*
Counsel
