IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARIA CAMILA VALENCIA RIOS, *on behalf of herself and all similarly situated individuals*, <br><br>    Plaintiff, <br><br> v. <br><br> BELVEDERE NRDE, LLC, and PEGASUS RESIDENTIAL, LLC, <br><br>    Defendants. | Civil Action No. 3:25-cv-00474-REP |

**DEFENDANT PEGASUS RESIDENTIAL, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS UNDER FEDERAL RULE 12(b)(6)**

Defendant Pegasus Residential, LLC ("Pegasus"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Memorandum in Support of its Motion to Dismiss the claims brought by Maria Camila Valencia Rios ("Plaintiff") on behalf of herself and a putative class of tenants against Pegasus and her landlord, Belvedere NDRE, LLC ("Belvedere LLC") (collectively, "Defendants"). The Court should dismiss Plaintiff's claim against Pegasus in Count I under the Virginia Consumer Protection Act ("VCPA") for the reasons discussed below.

**INTRODUCTION**

Belvedere LLC is the owner and landlord of an apartment complex in Bon Air, Virginia called The Belvedere. Pegasus manages The Belvedere. Plaintiff signed a Lease Agreement to rent an apartment in The Belvedere in March 2024 and renewed her lease shortly before filing this

action.[1] Her claims concern a Pest Fee and a Community Fee that she agreed to pay when she signed and later renewed her lease.

Plaintiff acknowledges that Defendants disclosed these fees in the Lease Agreement. She does not allege that Defendants charged her more than they disclosed in the Lease Agreement. Instead, she claims that Belvedere somehow waived the warranty of habitability by including these fees in the Lease Agreement in the first place. She claims that by including these fees, Defendants misrepresented "the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to a pest-free premises" and to "secure a right to properly maintained common spaces." ECF No. 1, at ¶¶ 28, 36. She accuses Pegasus of using "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" in violation of the VCPA. Va. Code Ann. § 59.1-200(14). That claim fails as a matter of law for several reasons.

First, she does not allege that Pegasus misrepresented or concealed any facts. The Lease Agreement told Plaintiff that she would be charged a monthly Pest Fee and Community Fee in addition to her base rent. Plaintiff paid these fees as agreed. She does not allege that Pegasus collected more from her than what the parties agreed to in the Lease Agreement. The Lease Agreement also contained the state-developed disclosure of tenants' rights and responsibilities required under Virginia law.

---

[1] While Plaintiff's claims hinge on supposed misrepresentations in her lease agreement, she does not attach a copy of that agreement to the Complaint. That omission is telling. As discussed below, the plain language of the lease agreements belies many of Plaintiff's allegations in the Complaint. This Court may take judicial notice of the lease agreement because it is integral to the Complaint and has been authenticated. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (stating that a District Court can consider matters from outside the four corners of the Complaint if they are "integral to the complaint and authentic.") (citation omitted). A copy of the Plaintiff's Lease Agreement (and associated addenda) is attached hereto as **Exhibit A**.

2

Lacking any misrepresentation or concealment, Plaintiff theorizes that it was illegal for Defendants to charge the fees at all, meaning that Defendants made impliedly false statements by including the fees in the Lease Agreement. However, the VCPA does not recognize claims for implied misrepresentations. Because Plaintiff fails to allege any misrepresentation or concealment of a material fact, her VCPA claim fails.

Second, the private right of action in the VCPA does not apply to "any aspect of a consumer transaction that is subject to the Virginia Residential Landlord Tenant Act . . . unless the act or practice of a landlord constitutes a misrepresentation or fraudulent act or practice" as defined in the VCPA. Va. Code Ann. § 59.1-199(5). Plaintiff accuses Pegasus of misrepresenting the "nature of the *lease transaction*" by charging Pest and Community Fees that supposedly violate the VRLTA. *See* ECF No. 1, at ¶¶ 28, 36 (emphasis added). Her claims depend on the warranty of habitability, which only exists in Virginia by virtue of the VRLTA. Accordingly, Plaintiff's claims are "subject to" the VRLTA. Because she fails to allege any misrepresentations or fraudulent act or practices, her VCPA claim is barred.

Third, Defendants did not waive the warranty of habitability by including the Pest or Community Fees in Plaintiff's Lease Agreement. For one, the plain text of the agreement dispels any claim that Defendants waived this non-waivable duty. As described below, the Lease Agreement repeatedly invokes the landlord's duty to provide a habitable living space and confirms the landlord's intent to do so.

Additionally, Plaintiff's argument that a landlord impermissibly waives the warranty of habitability by merely passing to tenants some of the costs of maintaining a habitable premises holds no water. She offers no authority to support this proposition and instead stretches a recent decision of the Virginia Court of Appeals, *Parrish v. Vance*, 898 S.E.2d 407 (Va. Ct. App. 2024),

well past the holding in that case. Additionally, the VRLTA allows landlords to pass on to their tenants the costs of providing services required as part of the warranty of habitability such as water, gas, trash collection, and other utilities. There is no reason to believe that the law permits a landlord to pass on some of the costs of providing an essential service like water, but sanctions that same landlord for passing on some of the costs of pest control.

### STATEMENT OF MATERIAL FACTS

Belvedere LLC owns The Belvedere, a multi-unit apartment complex in Bon Air, Virginia. ECF No. 1, at ¶ 18. Pegasus manages The Belvedere. *Id*. On March 9, 2024, Plaintiff signed a Lease Agreement to rent an apartment at The Belvedere. *Id*., at ¶ 19. That Lease Agreement listed Plaintiff as one of the "Residents," Belvedere, LLC as the "Owner," and Pegasus as the "Manager." Exh. A, at p. 1. On or around June 19, 2025, Plaintiff renewed her lease by entering into a new Lease Agreement. ECF No., 1 at p. 23. Except for an increase in the amount of the monthly Community Fee (discussed below), the terms in the renewed and original Lease Agreement "appear the same." *Id*.[2]

There are several important provisions in the Lease Agreement that warrant emphasis here. First, Paragraph 26 of the Lease Agreement notes the Landlord's duty to maintain certain areas and equipment in "good and safe condition" and to address "conditions materially affecting the health or safety of ordinary persons":

---

[2] Because Plaintiff acknowledges the continuity between the terms of the original and renewed Lease Agreement, we attach and address these together as the "Lease Agreement" herein.

> **26. CONDITION OF THE PREMISES AND ALTERATIONS.**
> Except for our duty to maintain in good and safe condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities, and, except for conditions materially affecting the health or safety of ordinary persons, you accept the apartment, fixtures, and furniture as is. You'll be given an Inventory and Condition form on or before move-in. Within 5 days after move-in, you must note on the form all defects or damage and return it to

Exh. A, at p. 4, ¶ 26.

Paragraph 32 of the Lease Agreement is entitled "Responsibilities of Owner" and sets forth various duties the landlord agrees to assume under the Lease. Those duties include:

> **32. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:
> (1) keep common areas reasonably clean and in a structurally safe condition, subject to paragraph 26 (Condition of the Premises and Alterations);
> (2) maintain fixtures, furniture, hot water, heating and A/C equipment;
> (3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
> (4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.
>
> If we violate the above, the following remedies apply:
> (a) you must make a written request for repair or remedy of the condition, and all rent must be current at the time;
> (b) after receiving the request, we have a reasonable time to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;
>
> If we fail to remedy the condition within a reasonable time, you may exercise any other remedies provided under Virginia law, including but not limited to Virginia Code Section 55.1-1244.1, as amended.

*Id.*, at p. 5.

One of the attachments to the Lease Agreement is a disclosure document mandated by state law. *Id.*, at pp. 71–75; *see* Va. Code Ann. § 55.1-1204(B). That document, prepared by a state agency, sets forth details concerning the statutory warranty of habitability. *See* Exh. A, at p. 8, ¶ 53 (noting that the disclosure was developed by the Virginia Department of Housing and

Community Development). The disclosure contains the following statements about the statutory warranty of habitability:

> **Fit and Habitable Premises:**
> A tenant has the right to a fit and habitable rental unit in accordance with the Uniform Statewide Building Code. The landlord must make all repairs needed to keep premises fit and habitable. (§55.1-1220) To enforce the right to get repairs, a tenant must be current in rent, give the landlord written notice and wait a reasonable period. If repairs are not made, a tenant can file a Tenant's Assertion in General District Court. This must be filed no later than five days after rent is due. There is no rent withholding in Virginia, except under repair and deduct. (§55.1-1244)
>
> **Uninhabitable Dwelling Unit at Move In:**
> If, at the beginning of the tenancy, there exists a fire hazard or a serious threat to the life, health or safety of the tenant (such as an infestation of rodents or a lack of heat, hot or cold running water, electricity, or adequate sewage disposal facilities), the tenant may terminate the rental agreement and receive a full refund of all deposits and rent paid to the landlord. To terminate the agreement and request a refund, the tenant must provide a written notice of termination no later than seven days after the tenancy started. If, upon receipt of notice, the landlord agrees such hazardous condition exists, the landlord must refund all deposits and rent paid within 15 business days of being notified or of the tenant vacating the unit, whichever occurs later. (§55.1-1234.1).

*Id.*, at pp. 71–75.

Plaintiff's Lease Agreement sets forth that she agreed to pay a monthly Pest Fee ($9.00 per month) and Community Fee ($23.00 per month). ECF No. 1, at ¶¶ 21–22. The latter increased to $34.00 per month when Plaintiff renewed her lease in 2025. *Id.*, at ¶ 23.

The Pest Fee appears in the "Utility Addendum" of Plaintiff's Lease Agreement. ECF No. 1, at ¶ 21; Exh. A, at pp. 10–12. The provision regarding "Pest Control" notes that a pest control provider will bill The Belvedere directly for pest control services, which will then allocate those costs to Plaintiff by a flat monthly fee of $9.00. Exh. A, at pp. 10. Plaintiff acknowledged that this flat fee "represent[s] a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost." *Id.*, at p. 11.

The Community Fee appears in a "Special Provisions" section of Plaintiff's Lease Agreement. ECF No. 1, at ¶ 22; Exh. A., at p. 8. Because there is a slight discrepancy between the language of that provision quoted in the Complaint and what actually appears in the Lease, we include a screenshot of the provision below:

> SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) For Leases after April 4, 2022, in addition to Rent set forth in Section 6, you are responsible for and required to pay a "community fee" in the amount of $23.00 plus utilities as outlined on the Utility Addendum each month as additional Rent, which "community fee" is charged to you for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you, regardless of the state of operation of such amenities or program. This "community fee" will not increase for the initial term of this Lease Contract, but may increase at lease renewal by written notice.

Exh. A, at p. 8.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure empowers this Court to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, [a plaintiff's] factual allegations, taken as true, must 'state a claim to relief that is plausible on its face.'" *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "The plausibility standard is not a probability requirement, but 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While the pleading need not contain "detailed factual allegations," it must contain "more than mere labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## ARGUMENT

**A.    Plaintiff fails to allege that Defendants made any affirmative misrepresentations of fact or concealed any facts in the Lease Agreement.**

The VCPA prohibits a "supplier" from using "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction," Va. Code Ann., § 59.1-200(A)(14). To state a claim under the VCPA, a plaintiff must allege, with particularity, "(1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp.

7

2d 731, 741 (E.D. Va. 2010) (citations omitted).[3, 4] "[A] misrepresentation of fact is a necessary element of proof" to support a VCPA claim. *Lambert v. Downtwon Garage, Inc.*, 553 S.E.2d 714, 716 (Va. 2003); *see also Galloway v. Priority Imps. Richmond, LLC*, 426 F. Supp. 3d 236, 244 (E.D. Va. 2019) ("To state a claim under the VCPA, a plaintiff must allege a fraudulent misrepresentation of fact."). Concealment of a material fact qualifies as a misrepresentation for purposes of the VCPA. *See Finney v. Clark Realty Capital, LLC*, Civil Action No. 1:20-cv-93, 2022 U.S. Dist. LEXIS 18645, at *15 (E.D. Va. Jan. 31, 2022) (citing *Guy v. Tidewater Inc. Props.*, 41 Va. Cir. 218, 230 (Va. Cir. Ct. 1996)).

Plaintiff fails to allege any facts showing that Defendants affirmatively misrepresented or concealed any material facts in the Lease Agreement. We address these issues in turn.

First, Plaintiff does not allege that Defendants made any affirmative misrepresentations of fact. The Lease Agreement states that tenants will be charged a Pest Fee of $9.00 per month. Exh. A, at p. 10 (Utility and Services Addendum). Plaintiff does not allege that Defendants charged her more than $9.00 a month as a Pest Fee. The Lease Agreement also states that tenants will be charged a $23.00 per month Community Fee. *Id.*, at p. 8. Plaintiff does not allege that Defendants charged her more than $23.00 (or $34.00 following the increase in 2025) as a Community Fee.

---

[3] For the purposes of this Motion to Dismiss only, Pegasus does not contest that it qualifies as a "supplier" under the VCPA, or that its dealings with Plaintiff qualify as a "consumer transaction." Pegasus also does not contest that Plaintiff has pled her claims of fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure.

[4] The meaning of "fraud" in the context of the VCPA differs from the meaning of that term at common law. The purpose of the VCPA was to "expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law." *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014). Therefore, while a plaintiff must plead the common law fraud elements of reliance and damages, she need not plead that the "misrepresentations were made knowingly or with the intent to deceive" to state a viable VCPA claim. *Id*. However, she must plead those elements to demonstrate that the violation was "willful" and qualify for treble damages. *Id*. (citing Va. Code Ann. § 59.1-204(A)).

8

Plaintiff does not identify any other affirmative statements in the Lease Agreement that she contends were false—let alone explain that contention.

Despite her best efforts, Plaintiff does not identify any material omissions in the Lease Agreement either. She claims that the Lease Agreement "failed to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Pest Fee and Community Fee." ECF No. 1, at ¶ 47. Put another way, she claims that Defendants failed to disclose the existence and extent of the warranty of habitability. She is wrong. There are at least three disclosures in Plaintiff's Lease Agreement that describe her rights and the landlord's duty to provide a fit and habitable residence.

The Lease Agreement includes the statement of rights and responsibilities required by Virginia Code § 55.1-1204(B). *See* Exh. A, at p. 71. That document informs the tenant that a lease cannot waive "a tenant's rights under the law." *Id*. It then describes some of those rights, including the statutory warranty of habitability. *Id*., at p. 72.[5]

There is also Paragraph 26 of the Lease Agreement. That provision informs Plaintiff that she accepts the apartment, fixtures, and furniture as is. Exh. A, at p. 4, ¶ 26. However, it is clear that this does not waive the landlord's duty to "maintain in good and safe condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities" or to address "conditions materially affecting the health or safety of ordinary persons[.]" *Id*. This language tracks the requirements in the statutory warranty of habitability. *See* Va. Code Ann. § 55.1-1220(A)(1), (4).

Paragraph 32 of the Lease Agreement does the same. The landlord promises to "keep common areas reasonably clean and in a structurally safe condition. Exh. A, at p. 5, ¶ 32. This

---

[5] Plaintiff signed this disclosure document on March 11, 2024. *Id*., at p. 76.

9

tracks one of the requirements in the statutory warranty of habitability. Va. Code Ann. § 55.1-1220(A)(3).[6] The landlord also commits to "maintain fixtures, furniture, hot water, heating, and A/C equipment." Exh. A, at p. 5, ¶ 32. This tracks several other requirements in the statutory warranty of habitability. Va. Code Ann. § 55.1-1220(A)(4), (7). The landlord also promises to "comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing." Exh. A., at p. 5, ¶ 32. This also implicates several of the requirements in the statutory warranty of habitability. Va. Code Ann. § 55.1-1220(A)(1), (2), (3), (4), (5), and (6). Finally, the landlord makes the requisite disclosures concerning mold and the tenant's rights, and commits to repair or remediate mold upon notice from the tenant. Exh. A, at pp. 16–17 (Mold Addendum); *id.*, at pp. 71–75 (statutorily required statement of rights, including disclosures concerning mold). This is also consistent with the requirements in the statutory warranty of habitability. Va. Code Ann. § 55.1-1220(A)(5).

Plaintiff's failure to identify an affirmative misrepresentation or concealment is not surprising. Her theory is that Defendants lacked the authority to include the fees in the Lease Agreement, and "misrepresent[ed] the nature of the lease transaction" by including those fees anyway. ECF No. 1, at ¶¶ 28, 36. This theory rests on an *implied* misrepresentation. Unfortunately for Plaintiff, an "implied misrepresentation" is not actionable under the VCPA. *See Reitz v. CVY of Alexandria, LLC*, Civil Action No. 1:23-cv-959 (RDA/LRV), 2025 U.S. Dist. LEXIS 54351, at *16–17 (E.D. Va. Mar. 24, 2025) (rejecting a VCPA claim where the plaintiff merely alleged "an implied misrepresentation"); *Gurwell v. Seaworld Parks & Entm't LLC*, No. 2:20cv312, 2021 U.S. Dist. LEXIS 176544, at *19 (E.D. Va. Aug. 11, 2021) (same).

---

[6] Elsewhere in the Lease Agreement, the landlord exercises its authority to regulate tenants' access to and conduct in common areas. Exh. A, at p. 3, ¶ 20; *id.*, at p. 4, ¶ 26; *id.*, at pp. 11–12; *id.*, at p. 13, ¶ 5; *id.*, at p. 20, ¶ 1; *id.*, at p. 56.

### B.     Plaintiff's VCPA claim is barred by Virginia Code § 59.1-199(5).

While the VCPA is a broad remedial statute, the General Assembly saw fit to carve out certain exemptions to the statute's private right of action. One of those exemptions applies when a claim concerns "[a]ny aspect of a consumer transaction that is subject to the Virginia Residential Landlord and Tenant Act[.]" Va. Code Ann. § 59.1-199(5). There is an exception to that exemption if "the act or practice of a landlord constitutes a misrepresentation or fraudulent practice under [the VCPA]." *Id*.

The VCPA does not define the phrase "subject to the Virginia Residential Landlord Tenant Act." *Id*. But that meaning is not difficult to ascertain. "'Subject to' means 'subordinate, subservient, inferior, obedient to; **governed or affected by**." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 810 S.E.2d 880, 884 (Va. 2018) (quoting *Donnelly v. Donatelli & Klein, Inc.*, 519 S.E.2d 133, 138 (Va. 1999) (quoting Black's Law Dictionary 1425 (6th ed. 1990)) (emphasis added). The question is whether Plaintiff's VCPA claim against Pegasus concerns "any aspect of a consumer transaction" that is "governed or affected by" the VRLTA. It does.

The purpose of the VRLTA is "to simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants[.]" *Isbell v. Commercial Inv. Assocs.*, 273 Va. 605, 615, 644 S.E.2d 72, 76 (2007) (citation omitted). The Act codifies the rights, obligations, restrictions, and remedies for landlords and tenants alike. *Id*., at §§ 55.1-1214 through 1259; *see also Steward v. Holland Family Props., LLC*, 726 S.E.2d 251, 253 (Va. 2012) (stating that landlords offering residential leases are "subject to the VRLTA."); *see also Copperpen, LC v. Gioscio*, 99 Va. Cir. 286, 291 (Clarke Cnty. Cir. Ct. 2018) (finding that the VRLTA "governs the rights and obligations of the parties in the context of this landlord/tenant

11

relationship."). This includes the rights and obligations in the statutory warranty of habitability. Va. Code Ann. § 55.1-1220. The Act also governs residential lease agreements and provides guidelines and prohibitions for those agreements. *See e.g.*, Va. Code Ann. §§ 55.1-1204 through 1213; *see also Sweeney v. West Group, Inc.*, 527 S.E.2d 787, 788–89 (Va. 2000).

When a tenant claims that a lease provision is invalid under the Act, a court necessarily looks to the provisions of the VRLTA to assess the claim. Thus, when a tenant challenges a provision of her residential lease, both the lease and her claim are "subject to" the Act. *See e.g., Sweeney v. West Group, Inc.*, 527 S.E.2d 787, 788–89 (Va. 2000). That is the case here.

Plaintiff says that she seeks damages "for *Defendants'* violations of the Virginia Residential Landlord Tenant Act . . . and the [VCPA]." ECF No. 1, at ¶ 1 (emphasis added). She specifies that her "claims stem from" Defendants' inclusion of the Pest and Community Fees in their Lease Agreements. *Id.*, at ¶ 2. Again and again, Plaintiff invokes the VRLTA to declare those fees illegal. *Id.*, at ¶¶ 27–29, 33, 46–47, 49, 54, 66–67, 70–71, 79–80. She claims that those fees violate the VRLTA and "induce[ ] [Defendants'] tenants into a residential lease that misrepresents their rights to certain services related to the warranty of habitability." *Id.*, at ¶¶ 3–5.

Crucially, the warranty of habitability did not exist at common law in Virginia. *Federico v. Lincoln Military Hous., LLC*, No. 2:12cv80, 2013 U.S. Dist. LEXIS 138613, at *25 (E.D. Va. Sep. 25, 2013) (noting that the implied warranty of habitability did not exist at common law in Virginia) (citations omitted); *Guy v. Tidewater Inv. Props.*, 41 Va. Cir. 218, 229 (Norfolk Cir. Ct. 1996) (same) (citations omitted). It is a creation of the VRLTA. *See* Va. Code Ann. § 55.1-1220; *Guy*, 41 Va. Cir. at 229 ("Thus a warranty of habitability exists under the VRLTA."). Since the warranty at the heart of Plaintiff's claim *exists only by virtue of the VRLTA*, Plaintiff's claims concerning that warranty are "subject to" the VRLTA.

Plaintiff will certainly argue that she qualifies for the exception found in § 59.1-199(5), because she has pled an "act or practice of a landlord constitutes a misrepresentation or fraudulent practice under [the VCPA]." *Id*. She has not. As discussed above, Plaintiff fails to identify any misrepresentations, concealments, or other fraudulent practices in the Lease Agreement—let alone any by Pegasus. Accordingly, she cannot wriggle her VCPA claim out of the general exemption for claims "subject to" the VRLTA.

In sum, because Plaintiff's VCPA claim relies on the warranty of habitability created by the VRLTA, that claim is "subject to" the VRLTA. Though the VCPA provides an exception to the exemption for claims "subject to" the VRLTA, Plaintiff fails to allege the requisite misrepresentations or fraudulent practices necessary to qualify for that exception. Therefore, her VCPA claim in Count I is barred.

C.   **Defendants did not attempt to waive the warranty of habitability.**

In its recent decision in *Parrish*, the Virginia Court of Appeals held that a landlord could not force a tenant to waive the warranty of habitability in a lease agreement. *Parrish*, 898 S.E.2d at 413. Plaintiff liberally cites *Parrish* in her Complaint as if it supports her claims. It does not. Plaintiff stretches the holding in *Parrish* much farther than the holding allows.

*Parrish* concerned a dispute between a landlord and a tenant over a flea infestation. When the landlord failed to fix the infestation, the tenant sought to terminate her lease under Virginia Code § 15.1-1244. *Id*. The landlord argued that the tenant could not terminate because, per the terms of the lease agreement, the tenant was "responsible for eliminating household pests" once she "took possession of the property." *Id*., at 411. The relevant provision of the agreement stated the following:

> Tenant shall be responsible for . . . [c]ontrolling and eliminating household pests including but not limited to fleas, ticks, bed bugs, roaches, silverfish, ants, crickets,

13

>and rodents during occupancy. Tenant shall be responsible for the costs of the elimination of all such pests and vermin during occupancy and upon vacating Premises.

*Id.* (bracketed language in original).

The Virginia Court of Appeals ruled for the tenant. The court's decision turned on three questions: (1) whether a lease agreement can "waive rights or remedies made non-waivable by statute"; (2) whether the statutory warranty of habitability is "made non-waivable by statute"; and (3) whether the lease agreement at issue purported to waive the warranty of habitability.

The court easily answered the first question in the negative, relying on the prohibition in Virginia Code § 55.1-1208 that makes unenforceable any provisions in a lease agreement in which a tenant agrees "to waive or forgo rights and remedies under this chapter." *Id*. Next, it concluded that the statutory warranty of habitability is one of those rights "made non-waivable by statute." *Id*. It noted that while the statute containing the warranty allows landlords to shift certain duties called for in that statute to tenants by agreement (*see* Va. Code Ann. § 55.1-1220(D)), the warranty of habitability is not among them. *Id*., at 412–13. Finally, the court easily concluded that the lease agreement illegally shifted "the burden to deal with insect infestations" to the tenant. *Id*., at 413.

The facts in *Parrish* are a far cry from those in this case. *Parrish* would be relevant if Plaintiff's Lease Agreement stated that Defendants would not do anything to prevent or address pests and made Plaintiff responsible for engaging a pest control company and paying the entire cost of that company's services. On the contrary, the terms of Plaintiff's Lease Agreement make it clear that the landlord assumed, and reserved its right to take actions necessary to exercise its duties under the statutory warranty of habitability.

Turning first to the issue of pest control, the landlord reserves the right to "conduct extermination operations in Residents' dwellings several times a year as needed to prevent insect

infestation." Exh. A, at p. 21, § VII (Community Policies, Rules, and Regulations Addendum). The landlord also reserves the right to inspect and/or treat Plaintiff's apartment for bedbugs. *Id*., at p. 13, ¶ 5 (Bed Bug Addendum). In fact, the agreement directs Plaintiff *not* to "treat the dwelling for a bed bug infestation on your own." *Id*. Finally, the "Pest Control" provision in the Utility and Services Addendum is clear that the landlord handles pest control at the complex. Exh. A, at pp. 10–12 . It states that the "service provider" bills the "pest control bills" to the landlord, which then allocates those costs to the tenant through a flat fee of $9.00 per month. *Id*., at 10. The landlord expressly assumes other duties called for in the statutory warranty of habitability as well. *See supra*, at pp. 9–10 (discussing these provisions and connecting them to provisions in the statutory warranty of habitability).

There is simply no comparison between the lease terms in *Parrish* and those at issue here. The landlord in *Parrish* completely abdicated all responsibility for pest control and pushed that responsibility, and all of the associated costs, onto the tenant. Here, the landlord affirmatively assumes the duty to inspect for and treat pests and perform extermination (preventative and reactive), limits Plaintiff's ability to treat for certain infestations, handles engaging pest control companies to perform those services, and charges a small flat fee to defray those costs. It also affirmatively assumes the duty to maintain and provide other requirements of the statutory warranty of habitability. The landlord's express assumption of these duties belies Plaintiff's claim that Defendants attempted to waive the warranty.

Finally, Plaintiff contends that charging *any fees* for pest control or maintenance of common areas is somehow a waiver of the warranty of habitability. Aside from her inapt comparison to *Parrish*, she offers no Virginia authority to support this maximalist proposition. Pegasus's counsel has found none. As discussed above, the terms of the Lease Agreement belie

15

this contention. Additionally, there is ample authority demonstrating that landlords *can* pass along the costs of services necessary to maintain a fit and habitable residence to tenants without abdicating their duties under the warranty of habitability.

For example, the statutory warranty of habitability requires landlords to supply water, arrange for trash collection and removal, and ensure "safe working order and condition of all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators" among other things. Va. Code Ann. § 55.1-1220(4), (6), (7). However, the VRLTA permits landlords to pass these costs to tenants.

In some instances, landlords may pass "service charges" assessed by electricity, oil, natural gas, water, and sewer utilities onto tenants. Va. Code Ann. § 55.1-1212(C).[7] In other instances, landlords can allocate among tenants the "actual or anticipated water, sewer, electrical, oil, or natural gas billings billed to the residential building owner from a third-party provider of the utility service." *Id*., at § 55.1-1212(D). Additionally, "in lieu of increasing rent," the statute allows landlords to utilize a "mathematical formula" to allocate actual or anticipated "local government fees" (to include trash collection, elevator testing, and fire and safety testing) onto tenants as well. *Id*., at § 55.1-1212(H).

It would be a strange state of affairs if a landlord could pass the costs of providing crucial services like water, gas, and trash removal onto her tenants without running afoul of the warranty of habitability, but that same landlord would face legal sanction if she passes the modest cost of pest control onto her tenants. That is clearly not what the Court of Appeals held in *Parrish*. That case stands for the simple, non-controversial proposition that a landlord cannot abdicate all responsibility for pest control or other incidents of the warranty of habitability. It does not hold

---

[7] The statute allows landlords to allocate these costs based on the metering equipment and/or billing system the landlord uses.

that landlords are prohibited from passing any of the costs of performing their duties under the warranty of habitability onto their tenants. Virginia law makes it clear that landlords can do just that without violating or waiving the warranty of habitability.

In sum, the plain text of Plaintiff's Lease Agreement demonstrates that the landlord expressly assumed the duties in the statutory warranty of habitability (Va. Code Ann. § 55.1-1220). While Defendants passed some of the costs of those duties onto tenants through the Pest and Community Fees, Plaintiff does not identify any legal authority that prevents them from doing so. On the contrary, there is ample authority showing that landlords may pass along costs incurred in providing services required by the warranty of habitability without violating or waiving that warranty.

## CONCLUSION

Accordingly, this Court should grant Pegasus's Motion to Dismiss and dismiss Plaintiff's VCPA claim in Count I, with prejudice.

Dated: August 6, 2025                                          Respectfully Submitted,

By: __/s/ James W. Walker__
James W. Walker (VSB #29257)
O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, VA 23219
jwalker@ohaganmeyer.com
F: (804) 403-7123
D: (804) 403-7123
*Counsel for Pegasus Residential, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of August, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to all authorized users. The foregoing was also served upon the following counsel of record via U.S. Mail and email:

Kristi C. Kelly, Esq. (VSB No. 72791)
Andrew J. Guzzo, Esq. (VSB No. 82170)
Casey S. Nash, Esq. (VSB No. 84261)
J. Patrick McNichol, Esq. (VSB No. 92699)
Matthew G. Rosendahl, Esq. (VSB No. 93738)
**KELLY GUZZO, PLC**
3925 Chaim Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
kkelly@kellyguzzo.com
aguzzo@kellyguzzo.com
casey@kellyguzzo.com
pat@kellyguzzo.com
matt@kellyguzzo.com
*Counsel for Plaintiffs*

                                                                */s/ James W. Walker*

## CERTIFICATION CONCERNING ARTIFICIAL INTELLIGENCE

1. I hereby certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. I hereby certify that every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

                                                                        */s/ James W. Walker*