**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

MARIA CAMILA VALENCIA RIOS, *on behalf of herself and all similarly situated individuals*,

Plaintiff,

v.

BELVEDERE NRDE, LLC, and PEGASUS RESIDENTIAL, LLC,

Defendants.

Civil Action No. 3:25-cv-00474-REP

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO CERTIFY A QUESTION TO THE SUPREME COURT OF VIRGINIA**

Defendants, Pegasus Residential, LLC ("Pegasus") and Belvedere NRDE, LLC ("Belvedere LLC") (collectively, "Defendants") serve the following as the Memorandum of Law in Support of their Joint Motion to Certify a Question to the Supreme Court of Virginia pursuant to Rule 5:40 of the Rules of the Supreme Court of Virginia. Defendants respectfully request that this Court grant the Motion and certify the question stated below to the Supreme Court of Virginia.

**INTRODUCTION**

In *Parrish v. Vance*, the Court of Appeals of Virginia established a bright-line rule that the Virginia Residential Landlord and Tenant Act ("VRLTA") imposes a nonwaivable warranty of habitability. 898 S.E.2d 407 (Va. Ct. App. 2024). That legal issue aside, *Parrish* was a relatively easy case. The lease at issue in that case contained a provision that shifted the duty to perform pest control and all of the associated costs entirely onto the tenant. The landlord staked his defense on the validity of that provision. The Court of Appeals easily concluded that the landlord could not rely on that provision as an affirmative defense to the tenant's claims. Plaintiff's Complaint is a

test case that seeks to extend *Parrish* to create a much broader bright-line rule regarding the warranty of habitability.

Plaintiff executed a lease to rent an apartment at The Belvedere, a complex owned by Belvedere, LLC and managed by Pegasus. There is no dispute that the lease fully disclosed that Plaintiff would be responsible for paying a monthly Pest Fee and a monthly Community Fee. The lease terms also clearly state that Defendants remain responsible for pest control and maintaining common areas and community amenities. Plaintiff does not allege that Defendants failed to disclose these fees to her. She does not allege that Defendants charged her higher fees than what the parties agreed upon in the lease. She does not allege that the fees are impermissibly high. She does not allege that Defendants charged the fees for services they did not provide. Plaintiff's theory is that, because pest control and community maintenance are core components of the warranty of habitability, Defendants sought to waive the warranty by charging her these fees at all.

Plaintiff contends that a landlord impermissibly waives the warranty of habitability by charging any fee to a tenant to for services that may be related, however tangentially, to responsibilities covered under the warranty. Under her theory, it does not matter that the landlord disclosed the fee in the lease and the tenant agreed to it. The fee is, in her view, illegal. It does not matter whether the fee is $1 or $100. The fee is illegal. It does not matter that the landlord remains responsible for providing the service for which the fee is assessed. The fee is illegal.

The problem is, *Parrish* established no such rule. Neither has any other decision of the Court of Appeals or the Supreme Court of Virginia. Plaintiff asks this Court to be the first to hold that charging any fee for a service covered by the warranty of habitability is a *per se* violation of the VRLTA.

That holding would have significant implications for Defendants in this case. But the effects would not stop there. The lease at issue in this case is a form lease provided by the National Apartment Association. *See* ECF 19-1. Presumably, many other landlords in the Commonwealth use this form lease, and many other lease agreements include similar fees that would be rendered illegal under Plaintiff's proposed rule.[1] Every landlord in the Commonwealth would need to review their lease agreements to ensure that they are not charging any fees that could come within the ambit of this new legal rule. The Supreme Court of Virginia should decide such a consequential question of state law. Fortunately, this case provides an ideal vehicle to certify that question to the Supreme Court.

First, the answer to the question of whether charging a fee for services provided under the warranty of habitability violates the VRLTA will be dispositive of the claims in this case. Plaintiff's VCPA claims against both Defendants, and its VRLTA claim against Belvedere, rely on the same premise: The Pest Fees and Community Fees were illegal under the VRLTA. The Virginia Supreme Court's determination of whether that premise is correct will decide this case—at least on the issue of liability.

Second, this question would not impose upon or greatly burden the Supreme Court of Virginia. The question is a simple question of state law. The Supreme Court has the benefit of the Court of Appeals' thorough analysis of the warranty of habitability in *Parrish* as a guide. It will simply need to decide if charging a fee constitutes the waiver that *Parrish* prohibited.

[1] Plaintiff's counsel seems to think that these fees are widespread and ripe for legal challenges. In an alert posted on the firm's website about this suit, Plaintiff's counsel urged other Virginia residents who may have "been charged similar unlawful fees" to attend a "Tenant Rights Legal Pop-Up" hosted in part by Plaintiff's counsel's firm. *See* https://www.kellyguzzo.com/virginia-tenants-lawsuit-illegal-rental-fees/.

Third, there is no reason to believe that certifying this narrow question will impose increased costs on the parties. Plaintiff pled this as a test case seeking to expand the scope of the rule set down in *Parrish*. As such, her Complaint poses a pure legal question: Is it illegal *per se* for a landlord to charge fees for services related to the warranty of habitability? Depending on the Supreme Court's answer, the parties will likely refocus their efforts either on dismissing the case or on addressing class certification and damages.

Finally, any delay occasioned by the certification is likely to be brief and is outweighed by the benefits of resolving the question. The Supreme Court of Virginia tends to answer certified questions relatively quickly. Given that the proposed question below is a narrow, straightforward, and purely legal question of state law, there is every reason to believe that the Supreme Court will do the same here. Additionally, the Supreme Court's answer will promote judicial efficiency by deciding a dispositive question of liability in this case.

Accordingly, and for the reasons discussed more below, Defendants respectfully request that this Court certify the question below to the Supreme Court of Virginia and stay this case until the Supreme Court provides its answer.

## PROPOSED CERTIFIED QUESTION

Does a landlord violate the Virginia Residential Landlord and Tenant Act by charging a tenant fee for any service that may be related to the warranty of habitability, even if the landlord retains the responsibility for providing the service under the lease and the fee is fully disclosed and agreed upon in the lease?

## LEGAL STANDARD

Rule 5:40 of the Rules of the Supreme Court of Virginia permits the Supreme Court of Virginia to "answer questions of law certified" from any federal court or the highest court of any

state, territory, or the District of Columbia. Va. Sup. Ct. R. 5:40(a). The Supreme Court has the discretion to do so when a "question of Virginia law is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of this Court or the Court of Appeals of Virginia." *Id*. Only a court may certify a question to the Supreme Court. *Id*., at 5:40(b).

"The decision to certify a question 'rests in the sound discretion of the federal court.'" *Kulshrestha v. Shady Grove Reprod. Sci. Ctr., P.C.*, 668 F. Supp. 3d 411, 419 (E.D. Va. 2023) (quoting *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 22 n.7 (2018)). Courts in this District consider the following factors when deciding whether to certify a question to the Supreme Court of Virginia: (i) whether the question is determinative of the case; (ii) the imposition certification would have on the time and resources of the Supreme Court of Virginia; (iii) increased costs to the parties that would result from certification; (iv) delay in disposition of the case that would result from certification; and (v) judicial efficiency." *Id*. (citing *W. Am. Ins. Co. v. Bank of Isle of Wight*, 673 F. Supp. 760, 764 (E.D. Va. 1987)).

If a court decides to certify a question to the Supreme Court of Virginia, the Court must submit a certification order to the Supreme Court addressing the following items set forth in Rule 5:40(c) of the Rules of the Supreme Court of Virginia.[2] The Supreme Court of Virginia will then

[2] These requirements include: (1) the nature of the controversy in which the question arises; (2) the question of law to be answered; (3) a statement of all facts relevant to the question certified; (4) the names of each of the parties involved; (5) the name, Virginia State Bar number, mailing address, telephone number (including any applicable extension), facsimile number (if any), and e-mail address (if any) of counsel for each of the parties involved; (6) a brief statement explaining how the certified question of law is determinative of the proceeding in the certifying court; and (7) a brief statement setting forth relevant decisions, if any, of this Court and the Court of Appeals of Virginia and the reasons why such decisions are not controlling." Va. Sup. Ct. R. 5:40(c). Defendants address the relevant portions of these requirements in the sections below. Additionally, Defendants have attached a proposed certification order addressing all seven of these factors to this Memorandum as **Exhibit 1**.

inform the Court whether it accepts or rejects the certified question. *Id.*, at 5:40(e). If the Supreme Court accepts the question—which it can revise and which acceptance it can revoke—the Supreme Court will set a briefing schedule and, if necessary, a date for oral argument. *Id.* The Supreme Court will then issue a written opinion answering the certified question "as soon as practicable after the submission of briefs and after any oral argument." *Id.*, at 5:40(i).

## ARGUMENT

### A. There is no guidance in the VRLTA, from the Court of Appeals, or from the Supreme Court of Virginia on whether a landlord illegally waives the statutory warranty of habitability by charging a fee for a service related to the warranty.[3]

Virginia did not recognize an implied warranty of habitability at common law. *See, e.g.*, *Powell v. John E. Hughes Orphanage*, 138 S.E. 637, 644 (Va. 1927); *Hutton v. Burke*, 46 Va. Cir. 146, 147, 1998 Va. Cir. LEXIS 232, at *3 (Loudoun 1998) ("There exists no common law implied warranty of habitability between the landlord and tenant."). For many years, Virginia followed the common law principle of *caveat emptor*, which imposed a duty on the tenant to "make examination of the demised premises to determine their safety and adaptability for the purposes for which they are hired." *Walters v. Martin*, 46 Va. Cir. 14, 15, 1998 Va. Cir. LEXIS 252, at *2 (Fairfax 1998).

However, in 1974, the General Assembly adopted the VRLTA to "provide a comprehensive scheme of landlords' and tenants' contractual rights and remedies." *Isbell v. Comm. Inv. Assocs.*, 644 S.E.2d 72, 78 (Va. 2007). The VRLTA includes a statutory version of the warranty of habitability. *See* Va. Code Ann. § 55.1-1220.[4] Among other things, that warranty requires the landlord to "[m]ake all repairs and do whatever is necessary to put and keep the

---

[3] This section addresses the contents of a certification order called for in Rule 5:40(c)(1), (2), (3), and (7) of the Rules of the Supreme Court of Virginia.

[4] Until January 1, 2019, the statutory warranty of habitability was codified at Virginia Code § 55-248.13.

premises in a fit and habitable condition" and "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition." *Id.*, at § 55.1-1220(2) and (3) (respectively). Leases arising under the VRLTA now incorporate this statutory warranty of habitability. *See Sanders v. UDR, Inc.*, No. 3:10-CV-459, 2010 U.S. Dist. LEXIS 106567, at *9–10 (E.D. Va. Oct. 4, 2010).

The Court of Appeals' decision in *Parrish* broke new ground concerning statutory warranty of habitability. That court became the first to define the phrase "fit and habitable" under the statutory warranty of habitability, as well as the first to declare that landlords and tenants cannot agree to any lease that waives the warranty.

Before *Parrish*, no Virginia court had "expressly defined the terms fit and habitable." *Id.*, at 412. The Court of Appeals relied on dictionary definitions and guidance from other states' courts to define the phrase as a premises that is "livable, free from serious defects to health and safety, and [has] necessary qualities for habitability." *Id.*, at 412. The Court of Appeals then surveyed the health dangers of fleas and concluded that a flea infestation "is clearly a condition that can make a dwelling unit not livable, nor free from serious defects to health and safety, and may deprive the unit of the necessary qualities for the particular purpose of human living." *Id.*

Having concluded that a flea infestation renders a dwelling unfit and uninhabitable, the Court of Appeals had to decide whether the lease provision that transferred all responsibility and costs for pest control onto the tenant could stand. In other words, the Court of Appeals had to decide whether the statutory warranty of habitability is unwaivable. It easily answered that question in the affirmative by looking to the mandatory language in the statute requiring the landlord to "make *all* repairs and do *whatever* is necessary to put and keep the premises in a fit and habitable condition." *Id.*, at 412 (citing Va. Code § 55.1-1220(A)) (emphasis in original).

*Parrish* was certainly a groundbreaking decision under the VRLTA. But for our purposes, it is more notable for what it did *not* decide. The Court of Appeals made no sweeping pronouncements about what circumstances constitute a waiver of the statutory warranty of habitability. In keeping with the "doctrine of judicial restraint dictates that [courts] decide cases 'on the best and narrowest grounds available'" the court simply construed the lease at issue in that case. *Id.*, at 415, n.11 (quoting *Comm. v. Swann*, 776 S.E.2d 265 (Va. 2015)). It concluded that the lease sought to waive the warranty by transferring *all responsibility* and *all costs* for pest control onto the tenant. That decision was a relatively simple one, given the wording of the lease and the underlying facts of the case.

Plaintiff's lease is materially different than the one at issue in *Parrish*. Her lease is clear that the landlord does not waive the statutory duty to "maintain in good and safe condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities" or to address "conditions materially affecting the health or safety of ordinary persons." *Compare* ECF 19-1, at ¶ 26, *with* Va. Code Ann. § 55.1-1220(A)(1), (4) (containing these requirements). The lease also places the duty to "keep common areas reasonably clean and in a structurally safe condition" squarely upon the landlord as well. *Compare* ECF 19-1, at ¶ 32, *with* Va. Code Ann. § 55.1-1220(A)(3). The lease also commits the landlord to "maintain fixtures, furniture, hot water, heating, and A/C equipment." *Compare* ECF 19-1, at ¶ 32, *with* Va. Code Ann. § 55.1-1220(a)(4), (7).

Plaintiff's lease also places the duty to perform pest control squarely upon the landlord. The landlord reserves the right to "conduct extermination operations in Residents' dwellings several times a year as needed to prevent insect infestation" as well as to inspect and/or treat the apartment for bedbugs. ECF 19-1, at p. 21 § VII; *id.*, at p. 13, ¶ 5. Where the lease in *Parrish*

placed the responsibility for pest control *entirely* onto the tenant, Plaintiff's lease directs her *not* to engage in certain pest control efforts on her own. *Id.*, at p. 13, ¶ 5. The lease is also clear that the landlord is responsible for engaging a service provider to provide pest control services in tenants' apartments, and that tenants will simply be charged a flat monthly fee for the service. *Id.*, at p. 10.

Whereas the lease at issue in *Parrish* unequivocally transferred the landlord's duties under the warranty of habitability onto the tenant, the lease at issue here expressly assigns those duties to the landlord. Whereas the landlord in *Parrish* acknowledged that he sought to waive the warranty of habitability with respect to pest control and contended he could legally do so, Defendants contend that they have not waived anything by merely charging the Pest and Community Fees. Ultimately, *Parrish* gives the Court and the parties no guidance on the key question in this case: Does Plaintiff's lease illegally waive the warranty of habitability by charging the Pest and Community Fees?

The VRLTA itself does not answer that question either. Notably, the statute has a section identifying "prohibited provisions in rental agreements." *See* Va. Code Ann. § 55.1-1208. The only prohibition on fees is where the tenant agrees to pay the landlord's attorney fees. *Id.*, at § 55.1-1208(A)(4). But there is nothing in this provision that prohibits a landlord from charging a fee to provide a service related to the warranty of habitability. Defendants are not aware of any other provision in the VRLTA that imposes such a prohibition.

The absence of a statutory prohibition is notable. "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *Cherry v. Lawson Realty Corp.*, 812 S.E.2d 775, 779 (Va. 2018) (quoting *Chesapeake & Ohio Ry. Co. v. Kinzer*, 142 S.E.2d 514, 518 (Va. 1965)). A statutory provision

does not change the common law unless "the legislative intent to do so is plainly manifested." *Id*. (quoting *Herndon v. St. Mary's Hosp., Inc.*, 587 S.E.2d 567, 569 (Va. 2003)). "[A] statutory change in the common law is limited to that which is expressly stated in the statute or necessarily implied by its language because there is a presumption that no change was intended." *Id*. (quoting *Mitchem v. Counts*, 523 S.E.2d 246, 250 (Va. 2000).

Since there was no implied warranty of habitability at common law in Virginia, there was no prohibition on landlords charging fees to maintain a habitable premise at common law either. Since there is no express prohibition on such fees in the VRLTA, there is no basis to assume that the General Assembly abrogated the common law's permissive approach towards those fees.

To be sure, Plaintiff will point to the VRLTA's general prohibition on any provision by which the tenant agrees to "waive or forgo rights or remedies under this chapter." Va. Code Ann. § 55.1-1208(A)(1).[5] But this simply calls the question that the parties are grappling to answer: Does charging a fee for a service related to the warranty of habitability constitute a "waiver" of the warranty? Neither this provision, nor any other provision of the VRLTA, nor *Parrish*, nor any other decision from the Court of Appeals or Supreme Court of Virginia answers that question. The Supreme Court of Virginia should be the first court to do so.

**B. The proposed question is a pure question of law. The answer to that question will streamline the case upon remand without causing an undue delay in this proceeding.**[6]

Plaintiff's claims all rely on the common contention: The Pest and Community Fees are *per se* illegal because they are an attempt to waive the warranty of habitability. Plaintiff contends that charging the Pest Fee "unlawfully shifts the burden to maintain a pest-free premises" onto the

[5] Research by Defendants' counsel indicates that *Parrish* is the case in which a Virginia court has addressed this provision.

[6] This section addresses the contents of a certification order called for in Rule 5:40(c)(2) and (6) of the Rules of the Supreme Court of Virginia.

tenants and forces the tenants "to waive their right to the warranty of habitability guaranteed by Virginia Law." ECF 1, at ¶¶ 26–27, 29. She describes the Community Fee as a "blatant attempt to evade the landlord's obligation to maintain its property's common spaces." *Id*., at ¶¶ 33–34. Thus, she contends that Defendants misrepresented the "nature of the lease transaction" because requiring the fee "represent[ed] that tenants must pay an additional cost in order to reside at the property and secure a right to a pest-free premises" and "properly maintained common spaces." *Id*., at ¶¶ 28, 36, 80.

Plaintiff's class allegations rest on the same contention. In addressing the "common questions of law and fact" requirement for class certification under Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure across the two putative classes, Plaintiff identifies two central questions that squarely implicate her contention that when a landlord charges a fee for a service covered by the warranty of habitability, that landlord unlawfully attempts to waive the warranty:

> "[W]hether [Defendants] misrepresented to Plaintiff and the putative class members in their lease agreements that payment of a Pest Fee and/or a Community Fee was necessary to secure their right to properly maintained common spaces and pest-free premises"; and
>
> [W]hether Belvedere violated Va. Code § 55.1-1220 by evading its obligation to maintain the building's common spaces and forcing tenants to waive the warrant of habitability through the lease agreement."

*See* Compl., at ¶¶ 42, 60, and 75.

The only other common questions Plaintiff identifies across her three claims and two classes are: (1) whether Belvedere LLC qualifies as a landlord under the VRLTA; (2) whether the Defendants' actions were willful; and (3) the appropriate measure of damages. Belvedere, LLC admitted that it is the "owner and lessor" of The Belvedere, meaning that the first of these remaining questions has already been answered in the affirmative. *See* ECF 16, at ¶ 14; *See* Va.

Code Ann. § 55.1-1200 (defining "landlord" under the VRLTA). The remaining two questions simply concern the amount and extent of damages available.

The proposed question addresses Plaintiff's central contention and presents a purely legal question of state law. Plaintiff's position is that the Pest and Community Fees are illegal *per se*—regardless of prior disclosure and agreement, the amount of the fee, or the fact that the landlord retains the responsibility for providing pest control and maintaining common areas under the lease. Defendants do not dispute that they charged these fees in Plaintiff's lease, but say that the fees are legal. The only question for the Virginia Supreme Court is whether those fees are legal under the VRLTA.

The answer to that question will either end this litigation or significantly streamline the case upon remand. If the Supreme Court concludes that the fees are not a waiver of the warranty of habitability, then it was neither illegal under the VRLTA nor misleading under the VCPA for Defendants to charge them. Plaintiff's claims fail as a matter of law.

On the other hand, if the Court concludes that the fees are an illegal waiver of the warranty of habitability, liability may be established at least for Plaintiff's claim under the VRLTA.[7] While Defendants may still argue that the leases were not false or misleading under the VCPA—or at least not willfully so—the main focus of the case upon remand will be class certification and damages. This would mean a significantly reduced scope of discovery and no need for dispositive motions under Federal Rules 12 and 56. In short, however the Supreme Court answers the certified question, it will be a boon for judicial economy.

[7] Assuming, *arguendo*, the Supreme Court finds the fees illegal, depending on its reasoning, the Defendants may still have grounds to argue upon remand that the lease was neither false nor misleading under the VCPA, or at least not willfully so.

Certifying the question will not unduly delay this case, but streamline it. This case is in its early stages. Defendants only recently filed their Answers and Motions to Dismiss. *See* ECF 14, 15, 16, 18, 19, and 20. The Defendants' Motions are not fully briefed as of this filing. Certifying the proposed question will relieve this Court of deciding some, if not all, of the issues raised in those pending Motions.

In those Motions, Defendants argue that Plaintiff fails to state plausible claims for relief under Federal Rule 12(b)(6). Defendants devote the bulk of both of their Motions to explaining why the Pest and Community Fees do not constitute a waiver of the warranty of habitability. *See* ECF 15 at pp. 4–7; ECF 19 at pp. 13–17. If the Court certifies the proposed question to the Supreme Court of Virginia, it will not need to address those portions of Defendants' Motions to Dismiss. The Supreme Court will decide that question.

If the Supreme Court concludes that the fees are *legal*, the Court can grant Defendants' Motions to Dismiss based on that decision. If the Supreme Court concludes that the fees are *illegal*, the only remaining question for this Court to answer on Defendants' Motions to Dismiss will be whether Plaintiff's VCPA claims are barred by the exemption in Virginia Code § 59.1-199(5). *See* ECF 19, at pp. 11–13. Thus, certifying the question will reduce the Court's burden in deciding two pending motions to dismiss.

Finally, as discussed above, even if the Supreme Court of Virginia concludes that the fees are illegal, that decision will streamline this case upon remand. While there may still be arguments that the leases were not false or misleading under the VCPA—or at least not willfully so—the main focus of the case will be upon class certification and damages. Removing or limiting the need for additional briefing on pending dispositive motions, removing the need for new dispositive

motions, and reducing the scope of discovery would significantly reduce the costs of this litigation for the parties as well.

**C. Certification will not impose upon the time or resources of the Supreme Court of Virginia.**

Defendants propose one pure question of state law for the Supreme Court of Virginia to decide. That question does not rely on any disputed facts. There is no factual record for the Supreme Court to wade through. It simply must decide whether a landlord violates the VRLTA by charging a fee for a service related to the warranty of habitability. There is every reason to believe that the Commonwealth's highest court can quickly and efficiently answer that legal question.

## CONCLUSION

Accordingly, and for the reasons discussed above, Defendants respectfully request that this Court exercise its discretion and certify the proposed question above to the Supreme Court of Virginia. Defendants attach a proposed Certification Order to this Memorandum for this Court's review.

Dated: August 19, 2025

Respectfully Submitted,

By: */s/ C. Quinn Adams*

James W. Walker (VSB #29257)
C. Quinn Adams (VSB #90506)
Melisa Azak (VSB #98089)
O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, VA 23219
jwalker@ohaganmeyer.com
dfinberg@ohaganmeyer.com
cadams@ohaganmeyer.com
mazak@ohaganmeyer.com
Facsimile: (804) 237-0250
Telephone: (804) 403-7125

and

Dana J. Finberg (VSB #34977)
O'HAGAN MEYER
One Embarcadero Center, Suite 2100
San Francisco, CA 94111
dfinberg@ohaganmeyer.com
Facsimile: (415) 578-6910
Telephone: (415) 578-6902
*Counsel for Pegasus Residential, LLC*

*<u>/s/ Jeffrey P. Miller</u>*
Jeffrey P. Miller (VSB #89410)
Jon R. L. Roellke (VSB #98039)
GENTRY LOCKE
919 E. Main Street, Suite 1130
Richmond, VA 23219
Telephone: 804-297-3700
Facsimile: 540-983-9400
Miller@gentrylocke.com
jroellke@gentrylocke.com
*Counsel for Belvedere NRDE, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of August, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to all authorized users.

*/s/ C. Quinn Adams*

**CERTIFICATION CONCERNING ARTIFICIAL INTELLIGENCE**

1. I hereby certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. I hereby certify that every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ C. Quinn Adams*