**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

MARIA CAMILA VALENCIA RIOS, AQUARIUS )
FILALI, and NADJI FILALI, *on behalf of themselves* )
*and all similarly situated individuals*, )
                                 )
         Plaintiffs, )
                                 )
v.                                      )
                                 )    Civil Action No. 3:25-cv-474-REP-MRC
BELVEDERE NRDE, LLC, PEGASUS )
RESIDENTIAL, LLC, and GLENMOOR OAKS )
NRDE, LLC, )
                                 )
         Defendants. )
                                 )

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Maria Camila Valencia Rios, Aquarius Filali, and Nadji Filali, on behalf of themselves and all other similarly situated individuals, file this Class Action Complaint against Defendants Belvedere NRDE, LLC ("Belvedere), Pegasus Residential, LLC ("Pegasus"), and Glenmoor Oaks NRDE, LLC ("Glenmoor"), and allege as follows:

## PRELIMINARY STATEMENT

1.     This is an action for actual, punitive, and statutory damages, costs, and attorneys' fees for Defendants' violations of the Virginia Residential Landlord Tenant Act ("VRLTA"), Va. Code § 55.1-1200, *et seq.*, and Virginia Consumer Protection Act ("VCPA"), Va. Code § 36.96.1, *et seq.*

2.     Plaintiffs' claims stem from Defendants' fraudulent and unlawful conduct in imposing and collecting pest control and "community" fees that Defendants represent as

1

necessary for each tenant to receive pest-control services and properly maintained common spaces in Defendants' multi-unit apartment complexes but that are in fact a profit generator that does not in fact cover the services Defendants claim to be covered and are not lawful under Virginia law in any event.  Plaintiffs also bring claims for a $300 so-called "move in" or "administration" fee that was never authorized as part of their lease agreements but was charged to them and others in Pegasus-run communities anyway.  Together, the Pest Control Fee, Community Fee, and Move-In Fee are referenced herein as the "Disputed Fees."

3.    Defendants' conduct is part of an increasingly common practice by landlords and property management firms across the country to impose additional so-called "junk fees" on unsuspecting tenants that are supposed to be covered by the tenants' monthly rent.  Landlords and property managers like the Defendants here utilize these fees in lieu of advertising the true cost of renting from them so that they can advertise units at a lower sticker price, only to generate additional profits through backdoor fees after the prospective tenant has been lured in. To come up with reasons for these fees, landlords and property managers represent to tenants that the fees are merely to cover the costs of specific services, but in reality they do not intend to in fact provide those services at the advertised cost and, worse, conceal from their tenants that they are already required to provide those services under state law. Defendants use "junk fees" in leasing contracts to increase their profits while making rental housing unaffordable and jeopardize the financial stability of tenants.

4.    Defendants were well aware at the time they implemented the Disputed Fees in their lease agreements that they bore the sole burden of providing pest-free premises to their tenants and maintaining the building's common areas in fit condition. Indeed, both VRLTA and

the Virginia Court of Appeals have explicitly held that such fees cannot be charged to tenants. *See* Va. Code § 55.1-1220(A) (requiring landlords to, in relevant part, "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition" and "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition"); *Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

5.      Notably, missing from the lease's section outlining relevant sections of the Virginia Residential Landlord Tenant Act, is a disclosure that Plaintiffs were already entitled to the rights and services that the lease agreement conditions upon payment of the Pest Fee and Community Fee and that the landlord bears the burden under Virginia Law to provide.  Further adding to the deceptive nature of the lease conditions, Defendants failed to disclose the actual services being provided in return for the fee, including what exactly the Community Fee was intended to cover and that the Pest Fee and Community Fee were in fact profit generators for Defendants, contrary to Defendants' representation that the fees were merely to cover the actual costs of the services purportedly being provided.  And Defendants never even provided a disclosure of the Move-In Fee in Plaintiffs' and the class members' form lease agreements that would authorize collection of the fee in any event.

6.      Indeed, Plaintiffs have not received any pest control services in their apartments, even though they are paying upwards of $9 a month (in Ms. Valencia's case) for the service. The Filalis even directly requested pest control treatment in their apartment, yet they never

received a visit from any pest control company.  And Plaintiffs' lease agreements explicitly state that Defendants will provide 48-hours' notice before entering their units for pest control treatment, yet Plaintiffs have never received notice that such treatment will be provided.

7.      Instead of providing the services that Defendants claim in their leases are covered by the Disputed Fees, Defendants in fact use the fees to generate additional profit while shifting the burden of providing a pest-free and habitable living space onto their tenants.

8.      Thus, Defendants engaged in and continue to engage in and profit from a scheme that induces their tenants into a residential lease that misrepresents their rights to certain services related to the warrant of habitability—guaranteed under Virginia Law—and forces them to waive such rights.  Living with the harm of having paid, and continuing to pay, Defendant's fraudulent monthly fees for over two years, Plaintiffs are forced to bring this lawsuit to seek relief for Defendants' ongoing violations of the VCPA and the VRLTA.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over all Counts under 28 U.S.C. § 1332(d) because Plaintiffs and putative class members (Virginia) and Defendants Belvedere NRDE, LLC, (Delaware and Utah), Pegasus Residential, LLC (Georgia), and Glenmoor Oaks NRDE, LLC (Delaware and Utah) are each citizens of different states and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.  Under 28 U.S.C. § 1332(d)(6), "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  The test for determining whether the amount in controversy is "the pecuniary result to either party which [a] judgment would produce."  *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* F.2d

568, 569 (4th Cir.1964)).  Statutory damages "are properly includable in the calculation of the jurisdictional amount," including increased damages for willful violations.  *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009).  Attorney's fees may also be included in the amount in controversy when recoverable under the asserted statute.  *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933) (holding that where a state statute provides for the award of attorney's fees, those fees can be considered as part of the amount in controversy).

10.    Here, Pegasus Residential, LLC has 4288 units among its 15 Virginia properties, meaning that there are at least 4288 putative class members (before counting any co-tenants in each unit) in Count One, which seeks relief for all persons who signed a lease with landlords of Virginia properties managed by Pegasus Residential, LLC. The Belvedere, a multi-unit apartment complex owned by Defendant Belvedere NDRE, LLC, has 296 units, and Glenmoor Oaks, owned by Defendant Glenmoor Oaks NRDE, LLC, has 248 units, meaning there are at least 544 putative class members (before counting any co-tenants in each unit) in Counts Two and Three, which seek relief for all persons who signed a lease with Defendants Belvedere and Glenmoor (collectively, the "Landlord Defendants").

11.    In Count One, which alleges violations of the VCPA, Plaintiffs and each class member are entitled to at least $1,000 per month for each month that Pegasus Residential, LLC willfully collected the Pest Fee and Community Fee, for at least a total of $24,000 per class member as of the date of this Complaint, or $102,912,000 for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Community Fees and Pest Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (holding future damages may be included in this

calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5. 3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy). This is before considering the attorney's fees that the Court could award under the VCPA. Va. Code § 59.1-204(B).

12.    In Count Three, Plaintiffs and each class member are entitled to at least $1,000 per month for each month that the Landlord Defendants willfully charged the Pest Fee and Community Fee, for at least a total of $24,000 per class member as of the date of this Complaint, or $13,056,000 for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Community Fees and Pest Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (holding future damages may be included in this calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5. 3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy). This is before considering the attorney's fees that the Court could award under the VCPA. Va. Code § 59.1-204(B).

13.    The Court also has jurisdiction over all other claims under at least 28 U.S.C. § 1367 because they each arise from the same case or controversy as Count One.

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division, where Plaintiffs reside and property owned and/or managed by Defendants is located.

## PARTIES

15.     Plaintiff Valencia Rios is a natural person residing in this Division and District.

16.     Plaintiffs Aquarius Filali and Nadji Filali (collectively, the "Filalis") are each a natural person who resides in this Division and District.

17.     Defendant Belvedere, NDRE, LLC, is a limited liability company incorporated in Delaware with its principal place of business in Utah.

18.     Defendant Belvedere is a "supplier" under the VCPA because it is a "lessor . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes.  Va. Code § 59.1-198.  Defendant Belvedere is also a "landlord" as defined by the VRLTA, as they are the owner and lessor of the dwelling units in The Belvedere, of which Ms. Valencia Rios is a tenant.

19.     Defendant Pegasus Residential, LLC, is a limited liability company incorporated in Georgia with its principal place of business in Georgia.  The Belvedere is advertised, operated, managed, and leased by Pegasus on behalf of Defendant Belvedere.

20.     Defendant Pegasus is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes.  Va. Code § 59.1-198.  Pegasus is the entity that collects the Community Fee and Pest Fee on behalf of Belvedere and Glenmoor, and it is liable for its misrepresentations to Plaintiffs and the putative class members that they owe, and that it can collect, such fees.

21.     Defendant Glenmoor Oaks NRDE, LLC, is a limited liability company incorporated in Delaware with its principal place of business in Utah.

22.    Defendant Glenmoor is a "supplier" under the VCPA because it is a "lessor . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes.  Va. Code § 59.1-198.  Defendant Glenmoor is also a "landlord" as defined by the VRLTA, as it is the owner and lessor of the dwelling units in Glenmoor Oaks, of which the Filalis are tenants.

## FACTS

### *Plaintiff Valencia Rios's Lease Agreement*

23.    Plaintiff Valencia Rios is a resident of North Chesterfield, Virginia.

24.    She resides at The Belvedere, a multi-unit apartment complex owned by Defendant Belvedere and managed by Pegasus.

25.    Ms. Valencia Rios first signed the Lease with Belvedere on March 9, 2024, for an initial term set to expire on June 18, 2025.

26.    After she signed the Lease, she was charged a $250.00 move in fee, despite there being so such fee allowed for in the Lease.

27.    Additionally, among the many provisions in the Lease are a Pest Fee and a Community Fee.

28.     The Pest Fee is included in a "Utility and Services Addendum" attached to the Lease.  The Pest Fee obligates Belvedere's tenants to pay a $9 monthly flat rate to cover any pest control bills sent to Belvedere by service providers.  Specifically, the Addendum claims that the fee covers "bills . . . billed by the service provider to us and then allocated to you [each tenant]" at a flat rate.

29.     The last page of the Lease includes a "special provision" that requires Belvedere's tenants to assume responsibility for and pay $23-per-month Community Fee.  The "special provision" provides:

> For Leases after April 4, 2022, in addition to Rent set forth in Section 6, you are responsible for and required to pay a Community Fee in the Rent, which Community Fee is charged to you for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you, regardless of the state of operation of such amenities or program.  This Community Fee will not increase for the initial term of the Lease Contract, but may increase at lease renewal by written notice.

30.     Ms. Valencia Rios renewed her Lease at the expiration of the lease term, and entered into a new agreement effective June 19, 2025. All terms appear the same except the Community Fee increased to $34.00 each month.

31.     Once she moved in, Ms. Valencia Rios was also charged a $300 "administration" fee, yet her lease does not contain any provision for charging such fee or an explanation of what it was for.

### *The Filalis' Lease Agreement*

32.     Plaintiff Aquarius and Nadji Filali are residents of Moseley, Virginia.

33.     They reside at Glenmoor Oaks, a multi-unit apartment complex owned by Defendant Glenmoor and managed by Pegasus.

34.     In October 2024, the Filalis executed a one-year lease agreement with Defendant Glenmoor which was provided to them by Pegasus.

35.     After they signed the Lease, they were charged a $300.00 move in fee, despite there being so such fee allowed for in the Lease.

36.     Among the many provisions in the Lease are a Pest Fee and a Community Fee.

37.    The Pest Fee is included in a "Utility and Services Addendum" attached to the Lease.  The Pest Fee obligates Glenmoor's tenants, including the Filalis, to pay a $6 monthly and claims that the fee covers "bills . . . billed by the service provider to us and then allocated to you [each tenant]" at a flat rate.

38.    The last page of the Lease includes a "special provision" that requires Glenmoor's tenants to assume responsibility for and pay $28-per-month Community Fee.  The "special provision" provides:

> For Leases after March 1, 2022, in addition to Rent set forth in Section 6, you are responsible for and required to pay a "community fee" in the amount of $28.00 plus utilities as outlined on the Utility Addendum each month as additional Rent, which "community fee" is charged to you for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you, regardless of the state of operation of such amenities or program. This "community fee" will not increase for the initial term of this Lease Contract, but may increase at lease renewal by written notice. Commercial vehicles may only be parked on the property with Management's written permission and must be registered with the Management Office and parked in the area(s) designated by Management once approval has been obtained.

39.    Like Ms. Valencia Rios, the Filalis were also charged a $300 "administration" fee once they moved into their apartment, yet their form lease agreement contained no provision authorizing the collection of such a fee.

### Defendants' Unlawful and Deceptive Pest Fee and Community Fee

40.    Pegasus, through its employees, was responsible for providing the Leases to Plaintiffs and the putative class members in Count One, and for collecting all amounts allegedly owed under their leases.  Upon information and belief, although the lease agreements in Count One are signed by Belvedere, Glenmoor, and the other respective landlords at Pegasus's Virginia properties, Pegasus is responsible for drafting the terms of the form lease agreements

10

used at all of its properties, including Plaintiffs Leases, which misrepresent to tenants like Plaintiffs that it can collect the Disputed Fees at issue in this lawsuit and that the fees are intended for services that Defendants never intended to provide or to provide at the actual cost to them. Pegasus is also directly responsible for publishing to tenants monthly invoices and other correspondence claiming that such fees are duly owed under the terms of their lease agreements.

41.    Although Defendants claimed that Plaintiffs and others lawfully owed these Disputed Fees, however, Virginia law prohibits Defendants from collecting either the Pest Fee or the Community Fee, and the Move-In Fee is not authorized by their lease agreements.

42.    Indeed, the assessment of the Pest Fee directly violates Virginia Law, which prohibits landlords from creating lease provisions that waive the warranty of habitability established by Va. Code § 55.1-220(A). *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

43.    Here, Defendants require their tenants to pay a monthly fee to cover pest-control costs. The imposition of this fee not only violates the Virginia Residential Landlord Tenant Act but also misrepresents the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to a pest-free premises. This conduct is in direct violation of the Virginia Consumer Protection Act. Va. Code § 59.1-200(14).

11

44.    Defendants knowingly forced Plaintiffs and all other tenants to waive their right to the warranty of habitability guaranteed by Virginia Law.  Defendants shifted the obligation to maintain a pest-free premises onto its tenants and profited from the imposition of "pest fees" that they had no right to charge.

45.    Similarly, Defendants also charged to Plaintiffs and their co-tenants, as well as, upon information and belief, tenants at Pegasus's other Virginia properties, a Community Fee that they knew they could not lawfully charge to tenants.

46.    For years, Defendants never imposed or required the payment of community upkeep fees.

47.    Then, for all leases beginning in 2022, Defendants implemented a monthly Community Fee at Pegasus's properties in Virginia that they had never previously collected or charged for the maintenance of the building's common areas.  Plaintiffs and all other tenants living at complexes managed by Defendant Pegasus, were suddenly required to bear the burden of common space maintenance to secure residence at the property.

48.    Through the required Community Fee, Defendants obligated Plaintiffs and all other tenants to pay for the right to well-maintained common spaces—a right to which they are already entitled under Virginia law.  Thus, the mandatory Community Fee, from which Defendants profit, directly violates the Virginia Residential Landlord Tenant Act which imposes an obligation on the landlord to maintain a multi-unit complex's common areas.  Va. Code § 55.1-1220.  Specifically the Act requires the landlord to "keep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition."  *Id.* § 55.1-1220(A)(3).  A landlord and tenant may agree in writing that *the tenant* perform the

landlord's duties but only if "the transaction is entered into in good faith and not for the purpose of evading the obligations of the landlord," and even then, the VRLTA does not permit the landlord in any circumstance to shift the costs of its own obligation to maintain common areas to the tenant. *Id.* § 55.1-1220(D).

49.    Here, the Community Fee is a blatant attempt to evade the landlord's obligation to maintain its property's common spaces.  The required Community Fee is unilaterally imposed through the Lease's pre-written "special provision," on tenants, including Plaintiffs, who are uninformed of their rights and unaware that the landlord is obligated to maintain the building's common spaces.

50.    The Defendants' imposition of the Community Fee misrepresents the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to properly maintained common spaces when, under Virginia Law, Plaintiffs and similarly situated tenants are already entitled through their payment of monthly rent.  These misrepresentations, made by both Defendants through the Lease Agreements drafted and executed by them and in Pegasus's monthly invoices to tenants claiming that such amounts are owed, directly violates the Virginia Consumer Protection Act. Va. Code § 59.1-200(14).

51.    The "special provision" also fails to adequately disclose the services for which tenants will be paying through the "community fee."  The "special provision" states that the Community Fee is charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and

13

applicable to you." Therefore, many of the services that for which tenants pay through the community fee are undisclosed and arbitrarily decided by Defendants.

52.    Regardless of the legality of the Pest Fee and Community Fee under Virginia law, moreover, the assessment of such fees is also deceptive for the independent reason that Defendants intentionally misrepresent the purpose and use of such fees, which are not intended—and were never intended—to simply cover the costs of the services purportedly being covered by the fees, but were in fact an additional profit generator that allowed Defendants to advertise lower rent prices before luring unsuspecting consumers into leases packed with additional, unlawful fees that generated profit for Defendants.

53.    The Defendants all contract with various pest control companies for fixed, yearly charges, and the Defendants know what these charges are prior to inducing tenants to agree to significantly higher charges in the utility addendums.

54.    For example, Glenmoor Oaks has a contract with a pest control service, where it pays the same cost for treatment on a yearly basis since August of 2022. Despite knowing the *exact* price of the service, it charges tenants significantly more in order to profit from the charge. Additionally, Glenmoor Oaks pest service, upon information and belief, does not even go into tenant units.

55.    Indeed, although charging Plaintiff Valencia and the tenants at The Belvedere a $9-per-month pest fee to purportedly cover the "bills" charged to Defendants Belvedere and Pegasus for pest control services that do not occur in their units and the actual costs of those services is far less than the amount of revenue generated by the Fee.  Upon information and

belief, the same is true at Pegasus's other properties in Virginia, including Glenmoor Oaks, where the Filalis reside.

56.    As stated above, Defendants do not use the pest control fee to enter tenant properties and spray their units as part of routine maintenance. Indeed, the Defendants' leases provide:

> We will give you written notice no less than 48 hours before the application of pesticide in the apartment unless you agree to a shorter notice period.

57.    Plaintiffs have never received notice from any Defendant that there would be pest control services provided in their units.

58.    Plaintiffs have also not witnessed any pest control services being provided at their respective properties, including within their units.

59.    In fact, on June 12, 2025, the Filalis submitted a service request to Defendants Pegasus and Glenmoor for pest control treatment inside their unit, but the request was marked as resolved by Pegasus on June 24, 2025 without any pest control vendor ever visiting their unit. Further, the documents produced by the Defendants show that no pest control service was conducted at Glenmoor that day.

60.    In addition to the improper Pest Fee and Community Fee, Plaintiffs were also charged a fee $300 fee at the time of move-in that was not authorized or provided for in their form lease agreements. Defendants charged and collected this "Move-In Fee"—also called an "Administration Fee"—for no apparent reason other than because Defendants decided to charge it to them.

15

61.     Upon information and belief, Defendants imposed the Disputed Fees for the purpose of generating additional profit and did not intend—and never intended at the time they had Plaintiffs and the class members execute their lease agreements—to provide the promised services for the amount they charged.  Instead, they intentionally charged fees that were far higher than any costs to them of providing pest control and community maintenance, and that were not even authorized or disclosed in Plaintiffs' lease agreements, so that they could generate additional profit for their own pecuniary gain.

62.     Defendants' misrepresentations of the Disputed Fees were willful.  Defendants stood to rake in thousands in additional revenue from tenants to cover costs that should have been covered by their rent and which were the landlords' sole burden to bear under Virginia law.  Defendants also profited from the imposition of the fees, as the revenues generated by such fees exceeded the actual costs of providing the alleged services that they covered, or were for services that were not even provided or disclosed in the lease agreements.  Defendants thus had a pecuniary incentive to represent to Plaintiffs and the putative class members that such fees were collectible, when they explicitly were not under Virginia law.

63.     Defendants knowingly forced Plaintiffs and their other tenants to assume the Landlord Defendants' and other Pegasus landlords' obligations to maintain the building's common spaces and a pest-free premises and profited from the imposition of the Disputed Fees that they had no right to charge. They did so solely for their pecuniary gain and without regard to this known harm to their tenants.

16

**COUNT ONE**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiffs against Defendant Pegasu**s)

64.    Plaintiffs incorporate each of the preceding allegations.

65.    Under Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of the following class of which they are each a putative class member:

> All persons who: (1) executed a lease within the past two years at a property managed by Defendant Pegasus and located in Virginia under which they (2) paid a Pest Fee, Community Fee, and/or Move-In or Administration Fee.

66.    **Numerosity. Fed R. Civ. P. 23(a)(1)**.  Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical.  There are at least 4288 class members based on the number of units at Pegasus's Virginia properties.  The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

67.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3)**.  Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them.  These questions predominate over the questions affecting only individual class members.  The principal issues include: (1) whether Defendant Pegasus misrepresented to Plaintiffs and the putative class members in their lease agreements that payment of any Disputed Fees was necessary to secure their right to properly maintained common spaces and pest-free premises; (2) whether Defendant Pegasus misrepresented to Plaintiffs and the putative class members that the Pest Fee and/or Community Fee would simply cover the costs of providing pest control and community maintenance and that they owed the Move-In Fee, when in fact the fees each

17

generated profits for Defendants; (3) whether Defendant Pegasus' violations were willful; and (4) the appropriate amount of damages for Defendant Pegasus' violations.

68.    **Typicality.** **Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of each putative class member.  In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

69.    **Adequacy of Representation.**  **Fed R. Civ. P. 23(a)(4).**  Plaintiffs are each an adequate class representative because their interests coincide with, and are not antagonistic to, the putative class members' interests.  They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

70.    **Superiority.**  **Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would prove burdensome and expensive.  It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation.  Even if class members could afford it, individual litigation would be an unnecessary burden on the Court.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant Pegasus's conduct.  By contrast, the class-

action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

71.    Defendant Pegasus represented in lease agreements drafted and published by it to Plaintiffs and the putative class members that they were required to pay a Pest Fee and/or a Community Fee as a condition of securing residence at the respective properties and receiving the right to properly maintained common spaces and pest-free premises. The services conditioned upon these fees are basic aspects of suitable living conditions under the warranty of habitability which Plaintiffs and the putative class members are guaranteed when entering into a residential lease agreement. Va. Code § 55.1-1200.

72.    Although Defendant Pegasus's lease agreements include a section outlining relevant sections of the Virginia Residential Landlord Tenant Act, they failed to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Pest Fee and Community Fee.  Defendant Pegasus also failed to disclose that Virginia Law obligates the landlord—not the tenant—to provide properly maintained common spaces and pest-free premises.

73.    Additionally, Pegasus misrepresented to Plaintiffs and the class members that the Pest Fee would simply cover services billed to them by the pest control vendor and that the Community Fee covered the "oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  In reality, such fees were designed by Pegasus and the Landlord Defendnats to generate additional profit and were intentionally set by them at a price point far higher than the actual cost of the services.  At the time they had Plaintiffs and the putative class members sign their respective

lease agreements, Pegasus and the Landlord Defendants did not have a present intent to provide the services described in Plaintiffs' and the class members' lease agreements at the cost they charged for each fee.

74.    Further, the "special provision" in the lease agreement fails to adequately disclose the services for which tenants will be paying through the Community Fee. The "special provision" states that the Community Fee will be charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you." Consequently, many of the services for which tenants pay through the Community Fee are undisclosed and arbitrarily decided by Defendants, compounding the fraudulent and deceptive nature of the fee provision.

75.    Defendant Pegasus thus affirmatively misrepresented in the lease agreements executed between the landlords of its Virginia properties and Plaintiffs and the putative class members that the payment of a Community Fee and/or Pest Fee was required to receive the benefit of pest control services and properly maintained community spaces and/or that such fees would simply cover the actual costs of the described services, when in fact they were designed to generate additional profit for Defendants.

76.    Additionally, the inclusion of the "pest fee" falsely represents that the units are receiving routine pest control treatment, when they are not providing that service to the tenants' units.

77.    And Defendants misrepresent the Administration or Move-In Fee as being duly owed when in fact it is not authorized under any terms of the Plaintiffs' and the class members' form lease agreements.

78.    Instead, these fees were unlawfully charged by the landlords of Defendant Pegasus' properties and collected by Pegasus. Pegasus intentionally misrepresented the fact that the payment of additional fees were necessary to obtain such services because they knew that such a practice is unlawful, and they wanted to conceal their customers' (i.e., landlords) violations of the VRLTA and to generate additional revenues at their properties.

79.    "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")).  The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200.  Va. Code § 59.1-199(5).  With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.).  There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

80.    Here, Plaintiffs and the putative class members relied on the representation that they were required to pay the Pest Control and Community Fees to their landlord in order to obtain pest control services and enjoy properly maintained common spaces when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those

21

agreements.  They also relied on the representation that the fees covered the actual costs to Defendants of providing the described services.  And they relied on Pegasus's claim that they owed the $300 Administration Fee at the time of move in.  Had Pegasus disclosed that the landlords at its properties could not collect such fees and were already obligated to provide pest-free and clean common areas, or had it disclosed that the fees were higher than the actual costs of the services being provided, Plaintiffs and the putative class members would not have agreed to pay the Pest Fee and Community Fee, which they believed at were necessary to access pest control services and enjoy properly maintained common spaces.  Plaintiffs relied on the representation that the payment of additional costs outlined in the lease agreement and "Utility Addendum" were necessary conditions to secure such suitable living conditions.  Had Plaintiffs known the fees were unlawful or were assessed at an amount higher than the actual cost to Defendants of providing the services, they would either have contested the fees or refused to sign the lease agreement.

81.    Plaintiffs and the putative class members have been damaged by Defendant Pegasus's misrepresentations, including through payment of amounts that they believed were necessary to secure their right to pest-free premises and properly maintained common spaces that they were already entitled to under Virginia Law and that were instead retained by Defendant Pegasus as profit.

82.    Defendant Pegasus has thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(14).

83.    Defendant Pegasus's violations were willful.  Defendant Pegasus knew at the time they imposed the Pest Fee and Community Fee that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing pest control services and maintaining common spaces in good condition.  Pegasus also wanted to deliberately conceal the scheme, as they knew it violated the VRLTA.  Pegasus also chose to charge the Move-In Fee that it knew was not authorized under Plaintiffs' and the class members' lease agreements.  It did so for its pecuniary gain, as the fees would help its bottom line and the bottom line of its customers (i.e., the landlords).

84.    Plaintiffs and the putative class members are thus entitled to damages for each month in which Pegasus collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if Defendant Pegasus' conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if Defendant Pegasus' conduct was willful.  Va. Code § 59.1-204.

85.    Plaintiffs and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

86.    And Plaintiffs and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

**<u>COUNT TWO</u>**
**VIOLATION OF VRTLA, Va. Code § 55.1-1220**
**(Class and Individual Claim by Plaintiffs against the Landlord Defendants)**

87.    Plaintiffs incorporate each of the preceding allegations.

88.     Under Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of the following class of which they are each a putative class member:

> All persons who: (1) executed a lease with the Landlord Defendants under which they (2) paid a Pest Fee and Community Fee.

89.     **Numerosity. Fed R. Civ. P. 23(a)(1)**.  Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical.  Based on the number of units at each property, there are at least 544 class members.  The class members' names and addresses can be identified through Defendants' and third-parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

90.     **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).**  Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them.  These questions predominate over the questions affecting only individual class members.  The principal issues include: (1) whether the Landlord Defendants are subject to the VRLTA; (2) whether the Landlord Defendants violated Va. Code § 55.1-1220 by evading its obligation to maintain the building's common spaces and forcing tenants to waive the warrant of habitability through the lease agreement; and (3) the appropriate amount of damages for the Landlord Defendants' conduct.

91.     **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of each putative class member.  In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

92.    **Adequacy of Representation.**  **Fed. R. Civ. P. 23(a)(4).**  Plaintiffs are each an adequate class representative because their interests coincide with, and are not antagonistic to, the putative class members' interests.  They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

93.    **Superiority.**  **Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would prove burdensome and expensive.  It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation.  Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Landlord Defendants' conduct.  By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

94.    The Landlord Defendants violated Va. Code § 55.1-1220 by (1) forcing tenants to waive the warranty of habitability through a Pest Fee included in the lease agreement (2) and shifting the burden to maintain common spaces onto its tenants through a mandatory Community Fee in the lease agreement.

95.    Virginia law prohibits landlords from shifting the burden to address pest infestations to the tenant, because the warranty of habitability is an unwaivable guarantee under Va. Code § 55.1-220(A).  *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024).

96.    The Landlord Defendants' demand in the Utility Addendum that tenants pay a Pest Fee is therefore a violation of the VRLTA.

97.    The Landlord Defendants further violated Va. Code § 55.1-1220 by evading their obligation to maintain the building's common areas by requiring Plaintiffs and the putative class members to pay a Community Fee in the "special provision" section of their lease agreement. Under Va. Code. § 55.1-1220(A)(3), landlords have an obligation to "keep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition." Under the same reasoning in *Parrish*, landlords may not shift this burden to tenants except to the extent they shift the entire burden of actually performing such duties—not simply paying for them—to the tenant through a good faith transaction not intended to evade the landlord's burden.  *See* Va. Code § 55.1-1220(D).

98.    Here, the exception under § 55.1-1220(D) does not apply to the Community Fee, which seeks to shift only the cost of the Landlord Defendants' obligation to maintain clean common areas to its tenants, as opposed to the actual duties themselves.  Moreover, the Landlord Defendants' Community Fee is in bad faith and constitutes a blatant attempt to evade their obligation to maintain their respective properties' common spaces.  The required community fee is unilaterally imposed through the lease's pre-written "special provision" and intended for the purpose of generating a profit.  The lease agreements fail to disclose that Plaintiffs and the putative class members do not bear the burden of maintaining common spaces

26

and are already entitled to the right to enjoy properly maintained common spaces conditioned upon payment of the Community Fee.

99.    Further, the "special provision" in the lease agreement fails to adequately disclose the services for which tenants will be paying through the Community Fee.  The "special provision" states that the Community Fee will be charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  Consequently, many of the services for which tenants pay through the Community Fee are undisclosed and arbitrarily decided by Defendants.

100.    Additionally, upon information and belief, the Community Fee does not actually cover the costs to Defendants of providing the described services but is instead intended—and was always intended since the time it was imposed in 2022—to generate additional profit for the Landlord Defendants and Pegasus.

101.    The Landlord Defendants assessed these fees in bad faith for their own pecuniary gain, with no present intent to provide the promised services, let alone at the cost they claimed the fees required.

102.    For these reasons, Plaintiff and the putative class members did not enter into the agreement knowingly and voluntarily, and the Landlord Defendants' unilateral imposition of the Community Fee onto Plaintiff and the putative class members, who were not adequately informed of their rights and of the landlord's obligation to maintain the building's common areas, was an agreement made in bad faith and constitutes a blatant attempt by the Landlord Defendants to evade their obligations under the VRLTA.  The Landlord Defendants' demand for

and collection of a Community Fee through its lease agreement is therefore in violation of the VRLTA.

103.    Due to the Landlord Defendants' violations of the VRLTA, Plaintiffs are entitled, individually and on behalf of the class, to their damages under Va. Code. § 55.1-1259, including, at minimum, the Pest Fee and Community Fee payments they and the putative class members have made thus far and will make during the pendency of the lawsuit.  Plaintiffs and the putative class are also entitled to an injunction enjoining the Pest Fee and the Community Fee into the future.

**COUNT THREE**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiffs against the Landlord Defendants)**

104.    Plaintiffs incorporate the preceding allegations.

105.    Under Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and the following class of which they are each a member:

All persons who: (1) executed a lease with the Landlord Defendants under which they (2) paid a Pest Fee, Community Fee, or Move-In/Administration Fee.

106.    **Numerosity. Fed R. Civ. P. 23(a)(1).**  The class members are so numerous that joinder of all is impractical.  The class members' names and addresses can be identified through Defendants' and third-parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

107.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).**  Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them.  These questions predominate over the questions affecting only individual class members.   The

28

principal issues include: (1) whether the Landlord Defendants misrepresented to Plaintiffs and the putative class members in their lease agreements that payment of a Pest Fee and/or a Community Fee were necessary to secure their right to properly maintained common spaces and pest-free premises; (2) whether the Landlord Defendants misrepresented to Plaintiffs and the putative class members that the Pest Fee and/or Community Fee would simply cover the costs of providing pest control and community maintenance, when in fact the fees each generated profits for Defendants; (3) whether the Landlord Defendants violations were willful; and (4) the appropriate amount of damages for the Landlord Defendants' violations.

108.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of each putative class member.   In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

109.    **Adequacy of Representation.  Fed R. Civ. P. 23(a)(4).**  Plaintiffs are each an adequate class representative because their interests coincide with, and are not antagonistic to, the putative class members' interests.  They have retained experienced and competent counsel; they intend to continue to prosecute this action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

110.    **Superiority. Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy.   The damages sought by each member are such that individual prosecution would

prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Landlord Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

111.    The Landlord Defendants represented in lease agreements with Plaintiffs and the putative class members that they were required to pay a Pest Fee and/or a Community Fee as a condition of securing residence at the respective properties and receiving the right to properly maintained common spaces and pest-free premises. The services conditioned upon these fees are basic aspects of suitable living conditions under the warranty of habitability which Plaintiffs and the putative class members are guaranteed when entering into a residential lease agreement. Va. Code § 55.1-1200.

112.    Although the Landlord Defendants' lease agreements include a section outlining relevant sections of the Virginia Residential Landlord Tenant Act, they failed to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Pest Fee and Community Fee. The Landlord Defendants also failed to disclose that Virginia Law obligates the landlord—not the tenant—to provide properly maintained common spaces and pest-free premises.

30

113.    Additionally, the Landlord Defendants misrepresented to Plaintiffs and the class members that the Pest Fee would simply cover services billed to them by the pest control vendor and that the Community Fee covered the "oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  In reality, such fees were designed by Pegasus and the Landlord Defendnats to generate additional profit and were intentionally set by them at a price point far higher than the actual cost of the services.  At the time they had Plaintiffs and the putative class members sign their respective lease agreements, Pegasus and the Landlord Defendants did not have a present intent to provide the services described in Plaintiffs' and the class members' lease agreements at the cost they charged for each fee.

114.    Further, the "special provision" in the lease agreement fails to adequately disclose the services for which tenants will be paying through the Community Fee.  The "special provision" states that the Community Fee will be charged to tenants "for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you."  Consequently, many of the services for which tenants pay through the Community Fee are undisclosed and arbitrarily decided by Defendants, compounding the fraudulent and deceptive nature of the fee provision.

115.    The Landlord Defendants also misrepresented to Plaintiffs and the class members that they owed the $300 Administration Fee at the time of move-in when no provision of the form lease agreements authorized the collection of such a fee from them.

116.    The Landlord Defendants thus affirmatively misrepresented in the lease agreements executed between the landlords of its Virginia properties and Plaintiffs and the

31

putative class members that the payment of a Community Fee and/or Pest Fee was required to receive the benefit of pest control services and properly maintained community spaces and/or that such fees would simply cover the actual costs of the described services, when in fact they were designed to generate additional profit for Defendants.

117.    The Landlord Defendants intentionally misrepresented the fact that the payment of additional fees were necessary to obtain such services because they knew that such a practice is unlawful, and they wanted to conceal their customers' (i.e., landlords) violations of the VRLTA and to generate additional revenues at their properties.

118.    "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")).  The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200.  Va. Code § 59.1-199(5).  With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.).  There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

119.   Here, Plaintiffs and the putative class members relied on the representation that they were required to pay the Pest Fee and Community Fee to the Landlord Defendants in order to obtain pest control services and enjoy properly maintained common spaces when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements.   They also relied on the representation that the fees covered the actual costs to Defendants of providing the described services.   And they relied on the claim that they duly owed the Administration or Move-In Fee in paying such fee.   Had the Landlord Defendants disclosed that they could not collect such fees and were already obligated to provide pest-free and clean common areas, or had they disclosed that the fees were higher than the actual costs of the services being provided or otherwise not authorized by their lease agreements, Plaintiffs and the putative class members would not have agreed to pay the Pest Fee and Community Fee, which they believed at were necessary to access pest control services and enjoy properly maintained common spaces and/or reside in their respective units.   Plaintiffs relied on the representation that the payment of additional costs outlined in the lease agreement and "Utility Addendum" were necessary conditions to secure such suitable living conditions.   Had Plaintiffs known the fees were unlawful or were assessed at an amount higher than the actual cost to Defendants of providing the services, they would either have contested the fees or refused to sign the lease agreement.

120.   Plaintiffs and the putative class members have been damaged by the Landlord Defendants' misrepresentations, including through payment of amounts that they believed were necessary to secure their right to pest-free premises and properly maintained common spaces

that they were already entitled to under Virginia Law and that were instead retained by Defendant Pegasus as profit.

121.    The Landlord Defendants have thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(14).

122.    The Landlord Defendants' violations were willful.  They knew at the time they imposed the Pest Fee and Community Fee that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing pest control services and maintaining common spaces in good condition. The Landlord Defendants also wanted to deliberately conceal the scheme, as they knew it violated the VRLTA.  And the Landlord Defendants sought to collect the Move-In Fee for no reason other than to generate additional revenue, as they knew at the time they charged the fee that it was not authorized by Plaintiffs' or the class member's lease agreements.  They did so for their pecuniary gain, as the fees would generate a profit.

123.    Plaintiffs and the putative class members are thus entitled to damages for each month in which the Landlord Defendants collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if Landlord Defendants' conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if the Landlord Defendants' conduct was willful.  Va. Code § 59.1-204.

124.    Plaintiffs and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

125.    And Plaintiffs and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code § 59.1-203(C) and 59.1-205.

WHEREFORE, Plaintiffs demands judgment for actual, statutory, and punitive damages against Defendants; injunctive relief; their attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFFS**

By:      */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiffs*