IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARIA CAMILLA VALENCIA RIOS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:25-cv-474 |
| ) | |
| BELVEDERE NRDE, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BELVEDERE NRDE, LLC AND GLENMOOR OAKS NRDE, LLC'S MOTION TO DISMISS COUNTS II AND III OF PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendants Belvedere NRDE, LLC ("Belvedere") and Glenmoor Oaks NRDE, LLC ("Glenmoor" and collectively, "Defendants"), by counsel, and in support of their Motion to Dismiss the First Amended Complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7, state as follows:

**INTRODUCTION**

Plaintiffs are three residential tenants who allege that certain common and fully disclosed fees charged by their landlords violate the Virginia Residential Landlord Tenant Act and the Virginia Consumer Protection Act. Defendants charged routine, industry-standard pest fees, community fees, and administrative fees as part of the agreement to rent apartments to Plaintiffs. Each of these fees was disclosed and made clear to Plaintiffs before they executed their lease agreements. Each Plaintiff had the opportunity and the ability to decline to lease the dwelling units owned by Defendants. Instead, Plaintiffs are attempting to seize on a recent narrow opinion from

a three-judge panel on the Virginia Court of Appeals in an attempt to completely overhaul the way that landlords operate in Virginia.

In *Parrish v. Vance*, 898 S.E.2d 407 (Va. Ct. App. 2024), the Virginia Court of Appeals held that a landlord could not use a lease provision requiring his tenant to eliminate all pests and vermin in the property as a defense to a "tenant's assertion" claim pursuant to Code § 55.1-1244 that the landlord breached the warranty of habitability by ignoring his tenants pleas to deal with a flea infestation. Plaintiff Rios has been a tenant in The Belvedere—an apartment complex owned by Belvedere—since March 2024, and recently renewed her lease for 2025. Plaintiffs Filalis have been tenants at Glenmoor Oaks—an apartment complex owned by Glenmoor—since October 2024. A copy of Plaintiff Rios' lease agreements for 2024 and 2025 and related materials are attached to this Memorandum as Exhibit A and Exhibit B, respectively.[1] Plaintiffs Filalis' lease agreement and related materials are attached to this Memorandum as Exhibit C. Plaintiffs are asking this Court to stretch this narrow holding to justify a wide-ranging claim that Virginia law prohibits landlords from charging any routine pest or community fees in residential leases. After Defendants filed a 12(b)(6) motion to dismiss Plaintiff Rios's first Complaint, Plaintiff amended to bolster the pleading by adding the Filalis as additional plaintiffs, adding Glenmoor as an additional defendant, and tacking on a challenge to the routine administrative fees charged by Belvedere and Glenmoor. Plaintiffs' second attempt is no better than Plaintiff Rios's first attempt. Virginia law does not go so far as they contend and Plaintiffs have failed to state a claim for which relief can be granted.

---

[1] A District Court can consider matters from outside the four corners of the Complaint if they are "integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016).

**LEGAL STANDARD**

A motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a 'complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.'") (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis omitted)). In evaluating a motion to dismiss under Rule 12(b)(6), a court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). That said, under Federal Rule of Civil Procedure 9(b), allegations of fraud must "state with particularity the circumstances constituting fraud."

**ARGUMENT**

I. **Plaintiffs Fail to State a Claim for a Violation of the VRLTA Because the Lease Agreements Preserve the Warranty of Habitability With Respect to Pest Infestations and Safe Common Areas.**

Plaintiffs' claims against Belvedere and Glenmoor stretch Virginia landlord-tenant law well past its breaking point. The Virginia Residential Landlord Tenant Act (the "VRLTA"), Va. Code §§ 55.1-1200, *et seq.*, provides a limited and narrow restriction on what language may be included

3

in a lease. Relevant here, a residential lease may not "waive or forego" any remedies provided by law. Plaintiffs contend that Belvedere and Glenmoor have violated the VRLTA by charging them certain fees for routine pest services and a community fee on the theory that a landlord is not permitted to charge a separate fee for services that are related to the quality of an apartment complex. Plaintiffs take the novel position that these fees amount to a waiver of the warranty of habitability. Plaintiffs are wrong. Plaintiffs fail to allege in their First Amended Complaint sufficient facts to show that any terms in their leases waive the warranty of habitability and the Court should dismiss Count II of the Complaint.

### A. Overview of the VRLTA.

Virginia residential landlord-tenant law is governed by the VRLTA. A fundamental aspect of the VRLTA is its preservation of landlord and tenants' rights to freedom of contract. Code § 55.1-1204 expressly provides that a "landlord and tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law, including rent . . . and other provisions governing the rights and obligations of the parties." Notably, the word "rent" is a defined term under the VRLTA: "'Rent' means all money, other than a security deposit, owed or paid to the landlord under the rental agreement . . . ." Va. Code § 55.1-1200. Additionally, at the time of Plaintiffs' lease agreements, the VRLTA provided that "in addition to the periodic rent," landlords should provide to tenants a description of "any rent and fees to be charged to the tenant." Code § 55.1-1204.1 (2024).[2] Among the specifically enumerated terms and conditions prohibited

---

[2] The 2025 amendments to Code § 55.1-1204.1 provide that:

> A landlord shall provide, beginning on the first page of the written rental agreement, an itemization of all charges to the tenant that comprise (i) the security deposit, (ii) the amount of rent due per payment period pursuant to the lease period, and (iii) any additional one-time charges due prior to the commencement date of the rental agreement or that will be included in the first rental payment. Immediately above the itemized list of charges, the written rental agreement shall state: No additional

4

by the VRLTA are terms requiring the tenant to "waive or forgo rights or remedies under this chapter." Va. Code § 55.1-1208(A)(1). Nothing in the VRLTA expressly prohibits fees for preventative pest services or community fees.

Additionally, the VRLTA provides specific obligations of both landlords and tenants. As relevant here, a landlord must make "all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Va. Code § 55.1-1220(A)(2). The VRLTA also imposes a statutory obligation on *tenants* to keep "that part of the dwelling unit and the part of the premises that he occupies free from insects and pests . . . and promptly notify the landlord of the existence of any insects or pests." Va. Code § 55.1-1227(A)(3). Furthermore, a tenant is statutorily liable for "the cost of treatment or extermination due to the tenant's fault in failing to prevent infestation of any insects or pests in the area occupied." Va. Code § 55.1-1227(A)(14).

### B. The Lease Does not Waive or Forego the Warranty of Habitability.

Plaintiffs allege in their First Amended Complaint that merely charging a $9.00 pest fee and $23.00 community fee ($34.00 the following year) constitutes an attempt by the landlord to evade its obligation to provide fit and habitable premises by shifting that obligation to tenants.[3] Plaintiffs are wrong because Virginia law, while requiring landlords to maintain fit premises and clean and safe common areas, does not prohibit landlords from collecting fees that are in any way connected with a condition that *could conceivably* implicate the warranty of habitability. Put differently, Plaintiffs have not sufficiently alleged that Defendants have violated the warranty of

---

security deposits or rent shall be charged unless they are listed below or incorporated into this agreement by way of a separate addendum after execution of this rental agreement.

[3] Plaintiffs do not allege in Count II that the administrative fees or the move-in fees violate the VRLTA.

5

habitability or that the fees charged are an impermissible attempt to bypass or shift the landlord's obligations.

Plaintiffs rely heavily on the *Parrish v. Vance* decision in support of their claims. 898 S.E.2d 407 (Va. Ct. App. 2024). There, the Virginia Court of Appeals held that a landlord breached the VRLTA when he failed to remediate a flea infestation in his tenant's single-family home. *Parrish*, 898 S.E.2d at 409. The infestation in *Parrish* was so dire that the fleas were too numerous to count, were visible to the tenant and her visitors, and "ate [the tenant's] body pretty bad." *Id.* at 409 n.2, 410. Despite the clear and present threat to his tenant's health and safety, and the requirement that a landlord provide a habitable residence, the landlord sought to escape his obligations to his tenant by pointing to a lease provision that provided that the tenant was "responsible for the costs of the elimination of all such pests and vermin during occupancy." *Id.* at 411. The Court held that this clause could not be used as a shield by the landlord to justify a refusal to maintain a habitable premise, because that protection is unwaivable under Virginia law. *Id.* at 413.

The holding of *Parrish* is necessarily narrow, and Plaintiffs' assertion in their First Amended Complaint that "both the VRLTA and the Virginia Court of Appeals have explicitly held that [pest and community] fees cannot be charged to tenants" is a misstatement of the law. (First Am. Compl. ¶ 4, Dkt. No. 30.) *Parrish* is entirely silent on the matter of whether a pest fee can be charged to a tenant, separate and apart from any assertion that the premises are unfit for habitation and *Parrish* does not include any holdings at all relevant to community fees. The VRLTA, on the other hand, *does* explicitly provide that the parties to a residential lease may agree to terms regarding "rent," of which—as defined by the VRLTA—the pest fee and the community fee are

6

part. *See* Va. Code § 55.1-1200 (defining "rent" as *all* payments to the landlord other than security deposits).[4]

There is simply an unbridgeable gap between the facts and holding of *Parrish* and the facts and conclusions Plaintiffs allege in their First Amended Complaint. The pest fee and the community fee are nothing more than separately delineated rent charges for services provided to tenants. They are not attempts by Defendants to shift their ultimate responsibility to provide habitable premises to its tenants.[5] Indeed, Defendants repeatedly reaffirmed their commitment to maintaining fit and habitable premises throughout the lease. *See* Ex. A, at p. 4, ¶ 26  *see also* Ex. B, at p. 4, ¶ 26; Ex. C, at p. 99, ¶ 26 (Plaintiff accepts the apartment as is "except for [landlord's] duty to maintain in good and safe condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities, and, except for conditions materially affecting the health or safety of ordinary persons"); and Ex. A, at p. 5,  ¶ 32 ; *see also* Ex. B, at p. 8, ¶ 32; Ex. C, at p. 100, ¶ 32 (covenanting to act with "customary diligence" to "keep common areas reasonably clean and in a structurally safe condition" and to "maintain fixtures, furniture, hot water, heating and A/C equipment"); Ex. A, at pp. 71–75; Ex. B, at pp. 19–24; Ex. C, at pp. 72–77 (containing Virginia Statement of Tenant Rights and Responsibilities, signed and acknowledged by Plaintiffs, that

---

[4] The fact that these charges are nothing more than a breakdown of the rent for the dwelling is supported by Code § 55.1-1212. Under that section, a landlord may utilize specific submetering equipment or ratio billing systems for multi-unit dwellings. *Id.* More to the point, however, is that Code § 55.1-1212(I) provides that "Nothing in this section shall be construed to prohibit an owner, manager, or operator of a residential building from including water, sewer, electrical, natural gas, oil, or other utilities in the amount of rent as specified in the rental agreement or lease." Plainly, the VRLTA treats charges for ancillary services as part of rent when included in the lease.

[5] As a matter of practice, a holding that landlords cannot separately charge fees for pest services and community area upkeep would have *zero* practical effect on tenants other than serving to obfuscate the calculation of rent. A holding that these fees are illegal under Virginia law would simply lead to landlords increasing the amount of periodic rent to cover these services.

7

explains the very right of which Plaintiffs contend they were unaware); *see also* Va. Code Ann. § 55.1-1204(B) (mandating the disclosure).

Notably, Plaintiffs have not alleged that their dwellings or common areas were uninhabitable, unsafe, or unsanitary. Of course, if Plaintiffs alleged that their units were infested with vermin such that the premises would be uninhabitable or that the common areas of their multi-unit building were unclean or unsafe, Defendants would bear the ultimate responsibility to remediate those conditions upon proper notice by Plaintiffs. But Plaintiffs have not, and cannot, allege that those conditions exist or that Defendants have ignored their ultimate responsibility to provide a fit and habitable dwelling space in the same manner as the *Parrish* landlord.[6] It is this ultimate responsibility that is implicated by the warranty of habitability, and charging a fee for a service that assists the tenant in fulfilling *her* obligation to maintain a pest free dwelling unit does not violate the warranty of habitability. *See* Code § 55.1-1227(A)(3) (noting that it is the *tenant's* responsibility to keep the dwelling unit free from insects and pests); *Parrish*, 898 S.E.2d at 412 (same).

Finally, the allegation that Defendants charged Plaintiffs' more for pest services or community amenities than it cost Defendants to provide such services or amenities, whether true or not, is completely irrelevant. As explained above, the VRLTA honors the rights of tenants and landlords to contract and explicitly states that any payments made by tenants to landlords are considered rent.[7] Va. Code § 55.1-1200 (defining "rent"). The General Assembly has decided that

---

[6] The Filalis' allegations that they requested pest control services, but did not receive in-unit service (which allegation the court must accept as true at this stage) does not contain any assertion that the Filalis' dwelling was uninhabitable.

[7] This statutory provision goes to the heart of Plaintiffs' misunderstanding of Virginia law. *See* Dkt. No. 30 at ¶ 60 (Alleging that fees charged by Defendants "should have been covered by [Plainitiffs'] rent"). Under Virginia law, these fees *are* rent and there is absolutely no basis for Plaintiffs' allegation that these fees may only be charged in the periodic rent.

8

tenants and landlords are capable of forming a contract and has decided that disclosures of all fees are sufficient protections for prospective tenants. Virginia law does not require landlords to provide premises at cost and permits landlords to make money for the services they provide.

Put simply, charging a pest fee and a community fee does not constitute waiver of the tenant's right to the warranty of habitability or the right to clean and structurally safe common areas and by agreeing to pay such fees, Plaintiffs have not waived or foregone any right secured by the VRLTA. Just as a landlord is permitted to charge administrative fees for water, sewer, HVAC, and other utilities that relate to the warranty of habitability, a landlord may charge a similar fee for the provision of pest control services and general maintenance and provision of community resources. Accordingly, the Court should dismiss Count II.

## II. Plaintiff Fails to State a Claim for a Violation of the VCPA Because Plaintiff has Failed to Allege that Defendants Have Engaged in any Fraudulent Practice.

Plaintiffs' First Amended Complaint fails to state a claim for a violation of the VCPA. The shotgun pleading searches desperately, but fails to find any misrepresentation by Defendants in the lease agreements. The lease agreements contain no misrepresentations of fact and the Court should dismiss Count III of the Complaint.

### A. Plaintiffs Fail to Allege that Defendants Have Made a Misrepresentation of Fact.

First and foremost, to state a claim under the VCPA, the plaintiff must allege (1) a fraudulent act (2) by a supplier (3) in a consumer transaction. *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010). Significantly, a VCPA claim may not be premised on a consumer transaction that is subject to the VRLTA "unless the act or practice of a landlord constitutes a **misrepresentation or fraudulent act** or practice under § 59.1-200." Va. Code § 59.1-

199 (emphasis added).[8] Plaintiffs rest their claim on the generic catch-all provision of Code § 59.1-200(14) which prohibits "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

Unlike allegations of common law fraud, an allegation of fraud in a consumer transaction constituting a violation of the VCPA does not have to show that alleged misrepresentations were made knowingly or with the intent to deceive. *Owens v. DRS Automotive Fantomworks, Inc.,* 764 S.E.2d 256, 260 (Va. 2014).[9] The "VCPA, however, still requires proof, in misrepresentation cases, of the elements of reliance and damages." *Id.* at 261. Thus, to plausibly state a claim for relief under the VCPA premised on a consumer transaction subject to the VRLTA, a plaintiff must show that the landlord made a false statement of material fact upon which plaintiff relied, and that the plaintiff suffered loss in so relying. *Id.* Under these circumstances, "a misrepresentation of fact is a necessary element of proof" in Plaintiff's VCPA claim. *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 716 (Va. 2001).

Plaintiffs' VCPA claims fail for a simple reason: the leases do not misrepresent anything. Plaintiffs' First Amended Complaint takes a shotgun approach to the lease agreements and attempt to latch onto multiple statements contained therein for their alleged "misrepresentations." None of them constitute misrepresentations under Virginia law.

First, Plaintiffs allege that the Defendants "represented in lease agreements with Plaintiffs . . . that they were required to pay a Pest Fee and/or Community Fee as a condition of securing residence at the respective properties." (Dkt. No. 30 at ¶ 111.) This is simply a true statement of

---

[8] Plaintiff's VCPA claim is plainly based on an "aspect of a consumer transaction that is subject to the [VRLTA]." *Id.*

[9] However, Plaintiff may not recover treble damages unless she can prove that the violations were willful, which she cannot.

10

fact and not a misrepresentation. As explained above, these fees constitute rent under Virginia law, and payment of rent is indeed a necessary condition of the Plaintiffs' right to occupy Defendants' properties.

Second, Plaintiffs allege that Defendants "represented in lease agreements with Plaintiffs . . . that they were required to pay a Pest Fee and/or Community Fee as a condition of . . . receiving the right to properly maintained common spaces and pest-free premises." *Id.* The lease agreements simply do not say this and Plaintiffs have misconstrued the lease agreements in an attempt to construct an actionable misrepresentation. Instead, the leases very clearly explain that the Plaintiffs have the right to fit and habitable premises. *See supra* Part I.A. (collecting lease provisions). Additionally, Plaintiffs' arguments in Count III fail for the same reasons their claims in Count II fail: Virginia law simply does not go as far as they contend. Defendants are permitted to charge fees, as rent, for pest services and community areas, and simply charging those fees does not, by any stretch of the imagination, constitute a misrepresentation of fact. *See supra*, Part II.[10]

Third, the Plaintiffs allege that the Defendants "failed to disclose that Plaintiffs . . . were already entitled to the rights that the lease agreement [sic] conditions upon payment of the Pest Fee and Community Fee." (Dkt. No. 30 at ¶ 112). First, as above, the Plaintiffs misunderstand Virginia law and nothing about separately delineating rent payments by the service provided amounts to a misrepresentation of fact. Second, Defendants made all disclosures required by

---

[10] Furthermore, Plaintiffs do not allege that this statement is false, only that it confers an obligation onto the tenant that is contrary to law. Even if a statement conferring an obligation that is contrary to law could constitute its falsity, this statement does no such thing. The VRLTA permits a landlord and tenant to agree in writing that the tenant perform the landlord's duties specified in subdivisions (A)(3), (6), and (7) of § 55.1-1220, "and also specified repairs, maintenance tasks, alterations, and remodeling." Code § 55.1-1220(D). Notably, § 55.1-1220(A)(3) obligates the landlord to "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition." The Community Fee falls squarely within the freedom of contractual delegation permitted in Code § 55.1-1220(D).

11

Virginia law. Defendants distributed, and Plaintiffs reviewed and acknowledged the Statement of Tenant Rights and Responsibilities developed by the Virginia Department of Housing and Community Development. Ex. A. at 71-75. Defendants made all necessary disclosures regarding Plaintiffs rights. Third, in order for a "misrepresentation by omission" to be actionable under the VCPA, Plaintiffs must allege that Defendants made a "knowing and deliberate decision not to disclose" a material fact. *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (2001). Setting aside that it is not at all clear what "material fact" Defendants are alleged to have failed to disclose, Plaintiffs' allegations in the Complaint are wholly conclusory with respect to the Defendants' "decision" not to provide legal advice to Plaintiffs.

Third, Plaintiffs allege that the Defendants "misrepresented to Plaintiffs . . . that the Pest Fee would simply cover services billed to them by the pest control vendor and that the Community Fee covered the 'oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management applicable to you.'" (Dkt. No. 30 at ¶ 113). Plaintiffs contend that Defendants set the fees at a point higher than the mere cost to provide services. *Id.* Plaintiffs once again omit the actual lease language and replace the key language with their own. The lease ***does not*** say that the pest fee "covers" services billed to Defendants. Instead the lease utility addendum notes that "pest control bills will be billed by the service provider to us and then allocated to you based on [flat rate billing]." Ex. A, at p. 10; *also* Ex. B, at p. 12, Ex. C, at p. 68. The addendum then explicitly discloses that if "a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement . . . represent a fair and reasonable amount for the service(s) provided ***and that the amount billed is not based on a monthly per unit cost.***" Ex. A, at p. 11 (emphasis added); *also* Ex. B, at p. 13, Ex. C, at p. 69. The lease does not represent that the pest fee is provided merely at cost; to the contrary,

the lease clearly discloses (and Plaintiffs agreed) that the fee was a fair and reasonable amount for the services provided. Similarly, nothing in the addendum regarding the community fee states that it is a mere at-cost fee for services provided.

Fourth, the Plaintiffs allege that the community fee "fails to adequately disclose the services for which tenants will be paying through the Community Fee." (Dkt. No. 30 at ¶ 114.) This is not a misrepresentation of fact or fraud and is not actionable under the VCPA.

Fifth, and finally, Plaintiffs contend that the Defendants "misrepresented to Plaintiffs . . . that they owed the $300/$250 (varies by Plaintiff) Administration Fee at the time of move-in when no provision of the form lease agreements authorized the collection of such a fee from them." (Dkt. No. 30 at ¶ 115).[11] The administration fee was fully disclosed to the Plaintiffs in their initial applications – reviewed and signed *before* Plaintiffs would have endorsed the lease – and was charged separately from any charges contained within the lease. Plaintiffs seem to be arguing that this is a "hidden fee" of some sort because it was not included on the form lease, but that argument misses the fact that Plaintiffs were already made aware of, and agreed to pay, the Administration Fee. Nothing was hidden – quite the opposite, the fees were clearly laid out and Plaintiffs agreed to pay them. With respect to any administration fee, Plaintiffs have failed to allege any misrepresentation of *fact*.

In sum, the First Amended Complaint fails to sufficiently allege that the Defendants have misrepresented any facts to them. In fact, the lease agreements *further* the Legislature's goal of transparency by explaining the specific charges that constitute the tenant's rent under the law and

---

[11] Plaintiffs allege that Ms. Rios was charged a $250 "Move In" fee and a separate $300 "Administrative" fee. (Dkt. No. 30, at ¶¶ 26, 31.) They also allege that the Filalis were charged a $300 "Move In" fee and a separate $300 "Administrative" fee. *Id.*, at ¶¶ 35, 39. Plaintiffs' counsel has confirmed that these allegations are incorrect. Instead, Ms. Rios was charged one $250 "Administrative" fee and the Filalis were charged one $300 "Administrative" fee.

13

the agreement. As defined by the VRLTA, the pest fee and community fee *are* rent (per Code § 55.1-1200) and Plaintiffs' payment of their rent guarantees those services to them. These fees were disclosed in the written lease agreement which Plaintiff had the opportunity to review. The administrative fees were disclosed *before* the Plaintiffs were offered a lease. Nothing in the lease affirmatively states or even hints that payment of the fees would constitute the waiver of the warranty of habitability or that Plaintiff would not be entitled to live in a habitable dwelling unit regardless of these fees.[12] The lease agreements repeatedly assure Plaintiffs that they are entitled to a safe, clean, and habitable apartment. *See* Part I. B *infra* (collecting lease provisions). The lease agreements contains no misrepresentations of fact. Accordingly, Plaintiffs have failed to state a claim for relief for a violation of the VCPA.

### III. Neither the VRLTA nor the VCPA Permit the Recovery of Punitive Damages.

Finally, Plaintiffs' claims for punitive damages should be dismissed. Both the VRLTA and VCPA are statutory remedies and neither provides for the recovery of punitive damages. Va. Code § 55.1-1259 (creating private right of action for violations of the VRLTA, but not providing for punitive damages); *cf. Wilson v. Whitaker*, 154 S.E.2d 124, 129 (Va. 1967) ("If the General Assembly had intended that punitive damages might be recovered, it could have specifically provided for such damages as other states have done.") (interpreting Virginia's wrongful death statute); *Estate of McCorkle v. Erickson Senior Living, LLC*, No. 0614-23-4, 2025 Va. App. LEXIS 145, at *13 (Va. Ct. App. Mar. 11, 2025) (noting that the VCPA "permits recovery of treble damages rather than punitive damages"). Plaintiffs have sought recovery of punitive damages in their First

---

[12] Defendants further incorporate their argument on Plaintiffs' VRLTA claim to the extent it is applicable to their argument on Plaintiffs' VCPA claim. As noted therein, Plaintiff fundamentally misunderstands the nature of the warranty of habitability and its relationship to fees contained in lease agreements.

Amended Complaint, (Dkt. No. 30, ¶ 1), but they have not alleged a cause of action which permits them to recover punitive damages.

## CONCLUSION

For the aforementioned reasons, Defendants respectfully request that this Court dismiss Counts II and III of Plaintiffs' First Amended Complaint for failure to state a claim for which relief can be granted.

                Respectfully submitted,

                **BELVEDERE NRDE, LLC, and**
                **GLENMOOR OAKS NRDE, LLC**

                /s/      Jon R.L. Roellke
                      Of Counsel

Jeffrey P. Miller (VSB No. 89410)
Jon R.L. Roellke (VSB No. 98039)
GENTRY LOCKE
P. O. Box 780
Richmond, Virginia  23218
Telephone:  (804) 956-2060
Facsimile: (540) 983-9400
miller@gentrylocke.com
jroellke@gentrylocke.com

*Counsel for Belvedere NRDE, LLC and Glenmoor Oaks NRDE, LLC*

15

**CERTIFICATE**

I hereby certify that on September 24, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to all authorized users. I further certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

           */s/ Jon R.L. Roellke*
           Counsel