**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| MARIA CAMILLA VALENCIA RIOS, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 3:25-cv-474 |
| BELVEDERE NRDE, LLC, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants Belvedere NRDE, LLC ("Belvedere") and Glenmoor Oaks NRDE, LLC ("Glenmoor" and collectively, "Defendants"), by counsel, and in support of their Motion to Dismiss the First Amended Complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7, state as follows in reply to Plaintiffs' opposition to the motion:

## INTRODUCTION

Plaintiffs' claims – as set out in their First Amended Complaint ("FAC") – allege violations of the Virginia Residential Landlord Tenant Act ("VRLTA") and the Virginia Consumer Protection Act ("VCPA"). While Plaintiffs point to the rise of "junk fees" (which is not a formal term of art nor is the phrase used in either statute) and reference the ongoing problems with affordable housing in this country, the actual legal claims set forth in the FAC have nothing to do with these issues. Instead, the claims in the FAC arise out of allegations that Defendants violated the VRLTA by shifting to Plaintiffs the burden to ensure that the property meets standard habitability requirements. Plaintiffs bootstrapped the VCPA claim to the underlying VRLTA claim by alleging that Defendants intentionally misrepresented the VRLTA violations. Plaintiffs rely heavily on

*Parrish v. Vance*, 898 S.E. 2d 407 (Va. App. 2024) in support of their positions, yet "junk fees" never once appear in the *Parrish* opinion.

The fact of the matter is that Defendants charged routine, industry-standard pest fees, community fees, and administrative fees as part of the agreement to rent apartments to Plaintiffs. Defendants properly disclosed each of these fees and made them abundantly clear to Plaintiffs before they executed their lease agreements. Each Plaintiff had the opportunity and the ability to decline to lease the dwelling units owned by Defendants. These fees violate neither the VRLTA nor the VCPA, and the Court cannot reasonably stretch the *Parrish* case as far as Plaintiffs ask it to. Despite having the opportunity to have a second go at it with an Amended Complaint, Plaintiffs have failed to state claims for which relief can be granted in Counts II and III.

**REPLY**

There are several general issues to address at the outset which permeate Plaintiffs' position in the opposition brief (Dkt. no. 47). Namely, the opening paragraphs of the opposition reference "discovery thus far" even though a Rule 12(b)(6) motion tests the sufficiency of the complaint (or in this case, amended complaint) on its face. The refence on pages 3-4 to insurance, for example, sounds like a totally new claim, which would be inappropriate to raise at this time and would constitute a *third* bite at the apple.[1] Plaintiffs also bring up in their opening pages specific dollar amounts of profits in concert with "discovery thus far," but the amount of any such profits is irrelevant and the analysis itself ignores the plain language of the Lease (as discussed further below). None of this, importantly, is relevant for purposes of a Rule 12(b)(6) motion.

---

[1] Notably there may be even more "bites at the apple" as Plaintiff's counsel appears to have recently filed at least two nearly identical suits in the Eastern District of Virginia. *See Deleon et al. v. BH Mgmt. Svcs. LLC*, No. 3:25-cv-818 (filed Oct. 3, 2025) and *Turnage et al. v. AION Mgmt. LLC; AP 11 North LLC*, No. 3:25-cv-840 (filed Oct. 10, 2025).

**I. Count II of the FAC Fails to State a Claim for a Violation of the VRLTA as Nothing in the Lease Agreements Shifts the Warranty of Habitability.**

In their opposition, Plaintiffs double down on their overly expansive reading of *Parish* that simply cannot be the law. In *Parrish*, the Virginia Court of Appeals held simply that a landlord could not use a lease provision requiring his tenant to eliminate all pests and vermin in the property as a defense to a "tenant's assertion" claim pursuant to Code § 55.1-1244 that the landlord breached the warranty of habitability by ignoring his tenants pleas to deal with a flea infestation. Plaintiffs claim that *Parrish* could be read to suggest that charging modest fees for pest control services violates Virginia law and entitles Plaintiffs to damages, but any such assertion (even if the court made one, which it did not) would be the definition of dicta. The issue of whether a landlord may charge fees – properly disclosed in the lease – for pest fees or any other fee, was never before the *Parrish* court. Plaintiffs' repeated representations that *Parrish* squarely addresses this question, despite it not actually being before the court, are wholly inaccurate.

Plaintiffs go to great rhetorical lengths to stretch *Parrish* to fit their claims,[2] but at its core, *Parrish* simply does not address the issue at hand. The VRLTA governs the fees at issue, and it provides limited and narrow instructions on what language may be included in a lease. Relevant here, a residential lease may not "waive or forego" any remedies provided by law. Va. Code § 55.1-1208(A)(1). In the same statute, the legislature makes it clear that *tenants* have responsibilities as well, requiring them to keep "that part of the dwelling unit and the part of the premises that he occupies free from insects and pests . . . and promptly notify the landlord of the existence of any

[2] This includes citing to an Iowa case, *DeStefano v. Apts. Downtown Inc.*, 879 N.W.2d 155 (Iowa 2016) which addresses fees charged for repairs, rather than standard prevention and maintenance, and in any event offers neither persuasive nor binding authority for Plaintiffs' argument – and is particularly unhelpful as the warranty is a statutory construction, not common law. The obvious inference of this citation is that Plaintiffs cannot find good supporting law in Virginia or even the Fourth Circuit.

insects or pests." Va. Code § 55.1-1227(A)(3). Furthermore, a tenant is statutorily liable for "the cost of treatment or extermination due to the tenant's fault in failing to prevent infestation of any insects or pests in the area occupied." Va. Code § 55.1-1227(A)(14). Accordingly it is to *both* the landlord and tenant's benefits to have a routine preventive pest control service, which in this case (and presumably in the tens of thousands of other cases using the same National Apartment Association form lease) is a service provided or coordinated by the landlord for a fee that is disclosed on the face of the lease.

Finally, Plaintiffs' argument defies common sense and common experience – what, exactly, is rent for in Plaintiffs' view? Do they think it is pure profit? Or is it just to cover property taxes and pay employees? Of course, as is commonly understood, rent covers many things – including profit to the landlord, and including costs for owning, operating, and yes, *maintaining*, the property. Just as a landlord is permitted to charge administrative fees for water, sewer, HVAC, and other utilities that relate to the warranty of habitability, a landlord may charge a similar fee for the provision of pest control services and general maintenance and provision of community resources. To suggest that a landlord impermissibly shifts the burden of habitability by including in the rent preventive pest control fees or general maintenance costs is to upend the centuries-old concept of how rent works. There is simply no way the Virginia Court of Appeals set out to do that with a tenant's assertion matter.

Plaintiffs contend that Belvedere and Glenmoor violated the VRLTA by charging certain fees for routine pest services and a community fee on their *Parrish*-based theory that these fees amount to a waiver of the warranty of habitability. But as noted in Defendants' prior briefing and above, Plaintiffs are wrong about *Parrish*, and thus their *Parrish*-distorted interpretation of the VRLTA is also fatally flawed. Accordingly, Plaintiffs fail to allege in their First Amended

Complaint sufficient facts to show that any terms in their leases waive the warranty of habitability and the Court should dismiss Count II of the Complaint.

Put simply, charging a pest fee and a community fee does not constitute waiver of the tenant's right to the warranty of habitability or the right to clean and structurally safe common areas and by agreeing to pay such fees, Plaintiffs have not waived or foregone any right secured by the VRLTA. Just as a landlord is permitted to charge administrative fees for water, sewer, HVAC, and other utilities that relate to the warranty of habitability, a landlord may charge a similar fee for the provision of pest control services and general maintenance and provision of community resources. Accordingly, the Court should dismiss Count II.

## II. Plaintiff Fails to State a Claim for a Violation of the VCPA in Count III By Failing to Allege Any Fraudulent Practice.

Plaintiffs' First Amended Complaint fails to state a claim for a violation of the VCPA. Plaintiffs' opposition suffers from the same failings as the FAC as it points to no misrepresentation by Defendants in the lease agreements that would support a VCPA claim. The lease agreements contain no misrepresentations of fact and the Court should dismiss Count III of the Complaint.

### A. Plaintiffs Fail to Allege that Defendants Have Made a Misrepresentation of Fact.

By statute, a VCPA claim may not be premised on a consumer transaction that is subject to the VRLTA "unless the act or practice of a landlord constitutes a **misrepresentation or fraudulent act** or practice under § 59.1-200." Va. Code § 59.1-199 (emphasis added).[3] Neither party disputes that, to plausibly state a claim for relief under the VCPA premised on a consumer transaction subject to the VRLTA, a plaintiff must show that the landlord made a false statement of material

[3] Plaintiffs' VCPA claim is plainly based on an "aspect of a consumer transaction that is subject to the [VRLTA]." *Id.*

fact upon which plaintiff relied, and that the plaintiff suffered loss in so relying. *See, e.g.*, Pltfs' Opp. Br., Dkt. no. 47 at p. 12.

Plaintiffs' opposition fails to correct the core flaw in Plaintiffs' VCPA claims, which is that the leases do not misrepresent anything. Plaintiffs point to four alleged misrepresentations in their opposition, each of which fails as a matter of law. (Opp. Br., Dkt. no. 47 at pp. 12-13.) First, Plaintiffs allege that the Defendants "misrepresent[ed] that they could collect the Pest Fee and Community Fee" which, under Plaintiffs' twisting of *Parrish* as set out above, Defendants could not legally do as it would constitute a shifting of the warranty of habitability. (*Id.* at p. 12.) This is simply a true statement of fact and not a misrepresentation. As explained above, these fees constitute rent under Virginia law, and payment of rent is indeed a necessary condition of the Plaintiffs' right to occupy Defendants' properties.

The second and third allegations run together; Plaintiffs allege that Defendants misrepresented that the Pest Fee would be a direct reimbursement to the landlord to cover the fees charged by the pest control provider, and allege a similar misrepresentation as to the community fee. The pest fee argument is a bold mis-statement of the actual lease provision from which Plaintiffs cherry-pick. The full section of the lease makes it abundantly clear to any prospective tenant that the pest control fees are not direct dollar-to-dollar reimbursements, but a reasonable flat fee:

> "If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost."

Valencia Lease, Pegasus _000010-000011 (Dkt. no. 42-1 at pp. 11-12) (quoted portion from numbered paragraph 2 on 42-1 p. 12); *see also* Filali Lease (Dkt. no. 42-3 at pp. 69-70). The service

provided by the landlord consists of the coordination and supervision of the underlying pest control treatment, which is why the fee is more than just a direct dollar-to-dollar reimbursement to the landlord for only the amount of the pest control treatment. The lease ***does not*** say that the pest fee solely "covers" services billed to Defendants.

Similarly, nothing in the addendum regarding the community fee states that it is a mere at-cost fee for services provided:

> "[. . . The community fee] is charged to you for the oversight of potential or current amenities, building maintenance, and all programs deemed necessary by ownership and management and applicable to you, regardless of the state of operation of such amenities or program."

Valencia Lease, Pegasus _00008 (Dkt. no. 42-1 at p. 9); *see also* Filali Lease (Dkt. no. 42-3 at p. 104). Again, Plaintiffs try to stretch the plain meaning of something to suit their theory of the case, but it does not work.[4]

Also in their discussion of this second alleged misrepresentation, Plaintiffs bandy about alleged "profits" arising out of the fees. As noted at the outset, this reliance on discovered materials is not proper for a motion on the sufficiency of the pleading itself, but more importantly, the profits – if any – are themselves irrelevant to this cause of action. Either the fees impermissibly shift the warranty of habitability, or they don't. What happens after that is of no moment.

Fourth and finally, the Plaintiffs allege that Defendants misrepresented their ability to collect an Administration Fee (Plaintiffs refer to it as a "move-in fee"), due upon signing the lease, when no provision of the form lease agreements authorized the collection of such a fee from them. The problem with Plaintiffs' argument here is that the administration fee was fully disclosed to the

---

[4] Here, again, Plaintiff pulls in inapposite cases from afar (California and New York), which are not only neither persuasive nor precedential, but are not even on point as they involve misrepresentations that fees were dollar-for-dollar reimbursements while *secretly* marking them up, which is not the case here.

Plaintiffs in their *initial applications* – reviewed and signed *before* Plaintiffs would have endorsed the lease – and was charged separately from any charges contained within the lease. Nothing was hidden – quite the opposite, the fees were clearly laid out and Plaintiffs agreed to pay them. The argument that the fee was a requirement for consideration for tenancy simply does not work in light of the fact that the fee is not due *until and unless they sign the lease*. It is not a non-refundable application fee, which is a fee that could be kept regardless of whether a tenant signs the lease. Quite the opposite, this fee is not owed unless and until a tenant signs on. With respect to any administration fee, Plaintiffs have failed to allege any misrepresentation of fact.

In sum, Plaintiffs fail to sufficiently allege that Defendants have misrepresented any facts to them. As defined by the VRLTA, the pest fee and community fee *are* rent (per Code § 55.1-1200) and Plaintiffs' payment of their rent guarantees those services to them. These fees were disclosed in the written lease agreement which Plaintiff had the opportunity to review. The administrative fees were disclosed *before* the Plaintiffs were offered a lease, and did not go into effect unless and until Plaintiffs *executed* the lease. Nothing in the lease affirmatively states or even hints that payment of the fees would constitute the waiver of the warranty of habitability or that Plaintiff would not be entitled to live in a habitable dwelling unit regardless of these fees. The lease agreements contains no misrepresentations of fact. Accordingly, Plaintiffs have failed to state a claim for relief for a violation of the VCPA.

**III. Neither the VRLTA nor the VCPA Permit the Recovery of Punitive Damages.**

Finally, Plaintiffs' claims for punitive damages should be dismissed. Plaintiffs, in no uncertain terms, assert claims for punitive damages twice in the FAC: first in paragraph 1, "This is an action for actual, **punitive**, and statutory damages, costs, and attorneys' fees . . ." and then again in the unnumbered "Wherefore" paragraph, "Plaintiffs demands [*sic*] judgment for actual,

statutory, and **punitive** damages against Defendants . . . ." (Dkt. no. 30 ¶¶ 1, 126) (emphasis added). In their opposition brief, Plaintiffs maintain that they have not made a claim for punitive damages, rather they were referring to the treble damages allowed under the VCPA. (Dkt. no. 47 at p. 17-18.) If this is true, Defendants will be happy to enter into an agreed stipulation that Plaintiffs are not seeking punitive damages. Short of that, the punitive damages claims should be dismissed as there is no cause of action in the FAC that allows them.[5]

## CONCLUSION

For the aforementioned reasons, Defendants respectfully request that this Court dismiss Counts II and III of Plaintiffs' First Amended Complaint for failure to state a claim for which relief can be granted.

Respectfully submitted,

**BELVEDERE NRDE, LLC, and**
**GLENMOOR OAKS NRDE, LLC**

/s/ *Jeffrey P. Miller*
Of Counsel

Jeffrey P. Miller (VSB No. 89410)
Jon R.L. Roellke (VSB No. 98039)
GENTRY LOCKE
P. O. Box 780
Richmond, Virginia 23218
Telephone: (804) 956-2060
Facsimile: (540) 983-9400
miller@gentrylocke.com
jroellke@gentrylocke.com

---

[5] Both the VRLTA and VCPA are statutory remedies and neither provides for the recovery of punitive damages. Va. Code § 55.1-1259 (creating private right of action for violations of the VRLTA, but not providing for punitive damages); *Estate of McCorkle v. Erickson Senior Living, LLC*, No. 0614-23-4, 2025 Va. App. LEXIS 145, at *13 (Va. Ct. App. Mar. 11, 2025) (noting that the VCPA "permits recovery of treble damages rather than punitive damages").

*Counsel for Belvedere NRDE, LLC and Glenmoor Oaks NRDE, LLC*

**CERTIFICATE**

I hereby certify that on October 14, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to all authorized users. I further certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Jeffrey P. Miller*
Counsel